# The Michigan State Insurance Company v. William W. Lewis.

*Insurance: Conditions: Waiver: Agent: Application: Policy: Relation.* Whether a condition in a policy of insurance, that there shall be no waiver or evasion of any of its terms or conditions, and that no agent or servant of the insurer has any right or power to waive or to dispense with any of the terms or conditions of insurance as printed and contained in the application or in the policy, is not to be construed as speaking, as regards terms and conditions contained in the policy alone, from the time when the policy is received, instead of being made to operate by relation from the date of the application, where it does not appear that any conditions other than those named in the application were then brought to the knowledge of the applicant:—*Quære?*

*Insurance: Statement of incumbrances: Notice to agent.* An applicant for insurance under a policy requiring the whole amount of incumbrance on the property to be stated, who has in good faith apprised the agent of the insurer of all the facts regarding a mortgage upon which considerable interest had accrued, has a right to assume, where the agent has prepared the application with a statement of the incumbrance at its original amount in round numbers, that such agent has set forth the amount of the mortgage with such accuracy as was by his principal deemed necessary or important.

*Insurance: Application: Incumbrances: Notice to agent: Estoppel.* An insurance company which has issued its policy upon such an application, with full notice of the facts, and received the applicant's money under circumstances leading him to suppose he was receiving in consideration thereof a valid contract of indemnity, is estopped from afterwards repudiating the contract for such an under-statement of the incumbrance.

*Policy: Condition: Notice: Reasonable time.* Under a policy providing that if any proceedings are had, commenced or taken for the sale of the property without the consent of the company the policy shall from thenceforth be void, the failure of the insured to notify the company of adverse proceedings against him would not alone operate to defeat the policy until after the lapse of a reasonable time for that purpose, and what would be a reasonable time is a question for the jury.

*General conditions: Special cases: Proceedings for sale.* A provision of a policy which is part of the printed form, designed to be sufficiently general in its conditions to answer in all cases, cannot be supposed to have had special and exceptional cases particularly in view; and it is at least doubtful whether the condition in question, against proceedings for sale, being part of the general form of policy, was intended to apply at all to adverse proceedings against the insured.

*Proceedings for sale: Advertisement: Efforts to find purchaser.* Whether such a condition, as applied to steps to be taken by the insured himself, would include a mere advertisement or offer to make a sale in the future, or a mere effort to find a purchaser, or would be limited,—the contract being one drawn by the insurer,—strictly to the entering upon the final consummation of a sale:—*Quære?*

*Policy: Condition: Proceedings for sale: Intent.* Where insurance is taken upon such condition on property covered by an overdue mortgage of which the insurer has notice, the mere commencement of adverse foreclosure proceedings will not be held to annul the policy where such an intent is not most clearly expressed in the language of the condition.

30 MICH.—6.

*Policy: Condition construed: Proceedings for sale.* Under a policy providing generally that if any proceedings for sale of the property insured be "had, commenced or taken" the policy shall be rendered void, the words of such condition are held satisfied, under the circumstances of this case, when applied to the foreclosure of a mortgage by advertisement, by confining them to the actual offer of the premises for sale at the time specified in the notice.

*Heard May 13.  Decided July 21.*

Error to Lenawee Circuit.

*Walker & Weaver* and *Ashley Pond,* for plaintiff in error.

*C. A. & S. C. Stacy* and *A. C. Baldwin,* for defendant in error.

COOLEY, J.

On the 22d day of April, 1871, Lewis made application to the plaintiff in error for insurance to the amount of two thousand three hundred dollars, on his dwelling house and other buildings and the contents thereof, situate in the township of Oakland. The application was prepared by one Buzzell, an agent of the insurance company, and contained a covenant of the correctness of its recitals. Among other things it stated the premises to be encumbered by a mortgage of "near five thousand three hundred dollars." In fact, the mortgage was given three years before, for five thousand three hundred and twenty-five dollars, with interest at seven per centum, and only one hundred dollars had been paid upon it, though Lewis claimed an offset or deduction of five hundred dollars more. There was conflicting evidence in the case, whether Lewis fully explained to the agent the situation of the mortgage, so as to enable the latter to get at the exact amount; Lewis claiming that he did, and that he urged the agent to call upon the owner of the mortgage, who lived not far off, and ascertain the amount from him; and that the agent replied that it was not necessary, as the sum stated in the application was near enough. The application was sent by the agent to the office of the company, where it was approved, and a policy of insurance

was made out and forwarded to Lewis, who received it some weeks after the date of the application. By one of the conditions of the policy, it was stated that in all cases of application for insurance the applicant shall state the whole amount of incumbrance on the property, or the policy should be void and of no effect. Another was, that "there shall be no waiver or evasion of any of the terms or conditions of this policy, and no agent or servant of this company has any right or power to waive or dispense with any of the terms or conditions of insurance, as printed or contained in the application or in this policy, excepting that the same is done by the concurrence of the secretary of the company, endorsed hereon or otherwise specifically acknowledged in writing by him." And in the body of the policy it was stated that "in case of any transfer or termination of the interest of the insured, or any part of his interest, in the property hereby insured, either by sale, contract or otherwise, or in case any mortgage, lien or incumbrance shall be executed thereon, or shall attach thereto, or if the title thereto shall be in any way changed or affected after the date of this policy, or if any proceedings for sale thereof shall be had, commenced or taken, or if the title thereto shall be or become less than an absolute and perfect one, without such consent, this policy shall from thenceforth be void and of none effect."

The evidence which is set forth in the record shows that the house insured was burned July 6, 1871. On the first of the preceding month the holder of the mortgage mentioned in the application commenced proceedings to foreclose it by advertisement, and those proceedings were brought to the knowledge of Lewis about two weeks before the fire, but no notice thereof was given to the insurance company. After the fire Lewis made his claim for indemnity, but the company refused payment upon the grounds, *first,* that the policy was made void by the misrepresentation regarding the incumbrance; or, if not by that, then,

*second,* by the proceeding taken for a foreclosure and the neglect to notify the company thereof and obtain its assent.

The legal questions in the case arise upon the instructions given and refused. Without giving them in detail, it may be sufficient to say that in substance the judge instructed the jury that if Lewis correctly informed the agent of the date and amount of the mortgage, and the latter by neglect or ignorance failed to state the true amount in the application, the policy would not be avoided by the omission; and he refused to instruct them that the institution of the foreclosure proceedings without the company's consent avoided the policy; or that the failure of Lewis to notify the company of such proceedings—they being ignorant thereof—would have that effect.

It is insisted on behalf of the plaintiff in error that, by the express terms of the contract between the parties, the policy is void for the under-statement of the amount due on the mortgage, and that the only question on this branch of the case is, whether the agent was authorized on behalf of the company to waive an exact compliance with the condition in this regard. But by the policy all power which the agent might otherwise have had to make such waiver is expressly taken away; and this being the contract of the parties, Lewis is bound by it, and is precluded from asserting such a waiver. On the other hand, it is claimed on the part of Lewis, that such a provision in the policy, which is not shown to have been expressly agreed upon, except as the policy proves it, and which cannot be supposed to have come to his knowledge until the policy was actually received by him, some weeks after the application was made and signed, cannot in reason reach back to and make void the transaction between himself and the agent at that time, for a default or blunder of the agent himself, whom the party dealing with him would have had a right to assume was acting in accordance with his instructions. If it were necessary to rule upon this point, it might be a

question worthy of consideration whether a condition that "there shall be no waiver or evasion of any of the terms or conditions of this policy, and no agent or servant of this company has any right or power to waive or to dispense with any of the terms or conditions of insurance as printed and contained in the application or in this policy," etc., is not, in fairness and justice, to be construed as speaking from the time when the policy is received, instead of being made to operate by relation from the date of the application, when no conditions, so far as we are informed, were brought to the knowledge of the insured, except those which were made a part of the application itself. Whatever might be the strict rule of law on the subject, it would not be surprising if a party receiving a policy with such a condition contained in it, should put this construction upon it, and govern his action accordingly.

We do not think, however, that the question in this case is one strictly of waiver. If the company, through its agent, as seems to have been found by the jury, was fairly apprised by Lewis of the facts regarding the mortgage, the latter had a right to assume that the agent would set forth the amount in the application with such accuracy as was deemed necessary or important by the company. Lewis was asked: "Is the property incumbered, and for what amount?" and he answered, "Yes, mortgage, near five thousand three hundred dollars." Now, the original amount of the mortgage was near five thousand three hundred dollars, but it had grown by an accumulation of interest. If the agent had all the facts before him, and chose to fill out the application in this manner, stating the original amount of the mortgage instead of the amount then owing, what could be more natural than for the applicant to infer that, by the company's construction of the question put to him, it was sufficiently answered by giving the original amount? Was he, especially if a person little accustomed to such contracts, or to business contracts in general, as this man would seem to have been, to insist upon more accuracy, and to

refuse to sign the paper unless it was had, when the company, through its agent, for whose benefit it was made, and to whom it was to give information, was fully satisfied with it as it was? This is the question which the case presents, and it is obviously not one of waiver. Lewis has requested the company to waive nothing; he has simply accepted such papers as have been prepared for him by the agent, after giving all the necessary information to enable them to be drawn as they should be. We have had occasion several times to hold in these insurance cases, that a company which has thus acted with full notice of the facts, and received a party's money under circumstances leading him to suppose he was receiving in consideration thereof a valid contract of indemnity, must, in equity and good conscience, be held estopped from repudiating the contract afterwards.—*Peoria Ins. Co. v. Hall, 12 Mich., 213 ; Ætna Ins. Co. v. Olmstead, 21 Mich., 253 ; North American Fire Ins. Co. v. Throop, 22 Mich., 159.* These cases, and others cited in the opinions, are authority for the instructions given in this case.

The instruction refused presents a more difficult question. As we understand it, it must assume either, *first*, that by the mere commencement, by the holder of the mortgage, of proceedings to foreclose it, the policy was avoided; or, *second*, that the failure of Lewis to notify the company of the proceedings terminated it. If it be claimed that the failure to give notice of the proceedings is what avoids the policy, then Lewis must have been entitled to a reasonable time for that purpose after learning that proceedings had been commenced, and what would be a reasonable time would be a question for the jury. But the company did not go to the jury on any such theory, and they cannot ask us to find on this record that the delay which took place was unreasonable. It only remains to be seen whether the institution of the foreclosure proceeding, of itself, and irrespective of any delay whatever in giving notice, relieved the company from further liability.

This question arises under that clause of the policy, already quoted, which was to avoid it "if any proceedings for sale [of the insured property] shall be had, commenced or taken" without the company's consent. The condition appears in a printed form of policy made use of by the company, and probably designed to be sufficiently general in its conditions to answer in all cases. Such a general form cannot be supposed to have had special and exceptional cases particularly in view, and it is therefore more likely to suggest troublesome questions of construction than a contract specially prepared for the case. That this condition was designed to put an end to the policy should the insured himself take proceedings for a sale without the company's consent, is unquestionable; that it was designed to give the like effect to adverse proceedings taken against him, may well admit of doubt. Even in the case of the assured himself, it is not very clear what should be understood as a proceeding for a sale. Would it include a mere advertisement, or offer to make a sale at some future time if a purchaser should present himself and an agreement upon terms be arrived at? Would one insured by such a policy be likely to understand that by this condition he had precluded himself from endeavoring to find a purchaser for his property, except with the company's assent? Might it not with great force be urged that the condition is to be referred rather to the entering upon the final consummation of a sale, than to the preliminary effort to find a purchaser, which may or may not be of any avail, and if not, could not harm the insurer? And would not this argument be especially forcible in the case of a contract drawn by the insurer, and which, in justice, if in any degree ambiguous, should be construed most strongly for the protection of the insured?

We express no definite opinion upon this point, because it is not regarded as necessarily involved in the case. But we are all of the opinion that where insurance is taken upon mortgaged property, and the insurer is notified of

the mortgage, and, of course, understands that proceedings may at any time be taken to foreclose it when the mortgage is over due, as seems to have been the case when this insurance was taken, it would be a most unreasonable and unjust construction of such a provision to hold that, by the mere commencement of foreclosure proceedings, the policy would be annulled. It would certainly be unjust in a case like the present, and it would be clearly unreasonable in many cases, especially when both the insurance and incumbrance were small in proportion to the value of the property, so that the effect of such a proceeding in increasing the risk would be inappreciable unless a sale should be actually permitted to take place. Doubtless the parties might agree upon conditions of this sweeping character, but the operation would in some cases be so unreasonable and oppressive that they ought never to be discovered in doubtful or ambiguous phrases, but should be expressed so plainly that no reasonable doubt can rest upon the mind that they were mutually understood and fully assented to by the parties respectively.

This condition refers to proceedings " had, commenced or taken " " for a sale." Applying it to the foreclosure of a mortgage by advertisement, the words seem to us to be satisfied by confining them to the actual offer of the premises for sale at the time specified in the notice. In strictness, it may be said that such an offer is the first proceeding for a sale; the previous notice is only a step which is to put it in the power of the mortgagee to make a sale at the time fixed upon if payment shall not sooner be made. The notice, in a certain sense, is undoubtedly a proceeding for a sale, and so would be the commencement of a suit in equity; either proceeding may possibly result in a sale; but while either method of foreclosure is in progress, and before the right to make a sale has been reached, it is in substance rather a proceeding for the collection of the mortgage moneys, than a proceeding for a sale. And it can never be known until the day fixed in the notice shall

arrive without actual payment being made, that a sale can take place at all. And though it may seem a somewhat strict construction of the words of this condition, to confine them to the proceedings actually "had, commenced or taken" to transfer the title by actual sale, yet as it seems to us more likely to be in accord with the understanding of the parties, or at least with the understanding the insured had a right to deduce from its terms, we have no alternative but to adopt it. We cannot suppose the insured in this case understood that his contract was liable to be terminated on the very day it was made, by the act of a third party in beginning the foreclosure of a mortgage of which the insurers were fully advised, and subject to which they had accepted the risk.

Finding no error in the record, the judgment must be affirmed, with costs.

The other Justices concurred.