THE RICHELIEU & ONTARIO NAVIGATION COMPANY v. THE THAMES & MERSEY MARINE INSURANCE COMPANY OF LIVERPOOL, LONDON & MANCHESTER.

*Marine insurance—Parties to suit on policy.*

Where charterers of a vessel have insured it under an agreement with the owners that in case of its total loss the insurance money shall be paid over to them, and have had themselves named in the policy as the parties on account of whom insurance was taken though the loss was made payable to the owners, the latter have such an interest in the policy as will entitle them to sue upon it in their own name.

Appeal from Wayne. (Chambers, J.) June 16.—Sept. 29.

ASSUMPSIT. Plaintiff brings error. Reversed.

*Moore & Canfield* for appellant. A sole owner of a steamer, to whom a policy of insurance thereon is made payable exclusively, is a proper party to sue on the policy in his own name: Wood on Ins. 319; 2 Pars. Mar. Ins. 448; *Motley v. Ins. Co.* 29 Me. 337; May on Ins. § 446; Barber on Ins. 31; *Hopkins v. Ins. Co.* 48 Mich. 148; *Anson v. Ins. Co.* 23 Iowa 84; *Winchester Ins. Co. v. Foster* 90 Ill. 122; *Western Development Co. v. Emery* 61 Cal. 611; the party insured is the party to be indemnified by the policy: 1 Phil. Mar. Ins. 2; 1 Arnould Mar. Ins. 25; an undisclosed principal may always sue upon a contract made in the name of his agent: Wharton's Agency § 433; *R. R. Co. v. Benedict* 5 Gray 561; Story's Agency § 161; *Ford v. Williams* 21 How. 287; *Maspons v. Mildred* L. R. 9 Q. B. D. 540, 541; Ewell's Agency 383; *Conklin v. Leeds* 58 Ill. 178; Pomeroy's Reme-

dies § 177; 1 Ch. Pl. 8; *O. &c. R. R. Co. v. Middleton* 20 Ill. 629; policies of marine insurance are usually taken out in the name of a broker or agent in his own name, "for whom it may concern," or some equivalent clause, and such a policy will be applied to the interest of the party or parties for whom it was *intended*, by the person who effects or orders it, if such party has authorized its being made beforehand, or subsequently adopts it: 1 Phillips Marine Ins. §§ 383, 385, 386, 388; 1 Parsons' Marine Ins. 47, 48; *Maspons v. Mildred* L. R. 9 Q. B. D. 530; *Protection Ins. Co. v. Wilson* 6 Ohio Stat. 553; 2 Arnould on Ins. 1269; *Browning v. Prov. Ins. Co.* L. R. 5 P. C. 263: 8 Eng. 217; *Daniels v. Ins. Co.* 10 Biss. 116; *Shawmut &c. Co. v. Ins. Co.* 12 Gray 540; *Sunderland Mar. Ins. Co. v. Kearney* 16 Q. B. 925.

*Maynard & Swan* for appellee.     To sue on a contract one must be privy to it: *Sisson v. Cleveland & Toledo Rd. Co.* 14 Mich. 496; *Litchfield v. Garratt* 10 Mich. 429; *Pipp v. Reynolds* 20 Mich. 88; *Turner v. McCarty* 22 Mich. 265; *Halsted v. Francis* 31 Mich. 113; *Hicks v. McGarry* 38 Mich. 667; *Hunt v. Strew* 39 Mich. 371; *Ayres v. Gallup* 44 Mich. 13; *Hidden v. Chappel* 48 Mich. 527; *Van Buren v. St. Joseph &c.* 28 Mich. 404–5; *Clay Fire & Marine Ins. Co. v. Huron &c. Co.* 31 Mich. 355–6; *Hartford Ins. Co. v. Davenport* 37 Mich. 613; *Bates v. Equitable Ins. Co.* 10 Wall. 33; *Friemansdorf v. Watertown Ins. Co.* 1 Fed. Rep. 69; unless a policy contain the words "for whom it may concern," or equivalent expressions, indicative of a purpose to insure others, the rule is that if it insures the interest of one person only, no other person can show that it was also intended to cover his interest: *Finney v. Bedford &c. Co.* 8 Met. 348; *Graves v. Boston &c. Co.* 2 Cr. 419; *Dumas v. Jones* 4 Mass. 647; *Pearson v. Lord* 6 Mass. 81; *Turner v. Burrows* 5 Wend. 541; *Stackpole v. Arnold* 11 Mass. 27.

CAMPBELL, J.  Plaintiff sued defendant on a marine policy upon the steamer Spartan, dated April 21, 1883, and running from May 1 to November 30, 1883, covering the usual risks on any of the Great Lakes and river St. Lawrence.  The vessel was wrecked on Lake Superior on the 19th of June, and abandonment was made by plaintiff and accepted by defendant as for a total loss.  Defendant took posession of the

wreck, and had the vessel repaired, at an expense of over 50 per cent.

The defense rested on the alleged ground that plaintiff was not insured, and could not sue on the policy. It was also claimed that no one was insured so as to create any legal obligation.

The form of the policy, as issued, was in the beginning that defendant by that policy of insurance " on account of Owen Sound Steamship Company,—loss, if any, payable to the Richelieu & Ontario Navigation Company," did make insurance on the property in question upon the terms specified. Nothing appears in any other part of the policy to show who was supposed to be insured, and no name of any one appears for any purpose except as quoted. The property insured is "the body, tackle, apparel and other furniture of the iron steamer called the 'Spartan,'" and it is provided that "the said vessel, tackle, apparel and other furniture are valued at fifty thousand dollars, without any further account to be given by the assured to the assurers, for the same." Provision was made as to the duties of both parties in case of damage, and for total abandonment in certain contingencies stated.

The circuit court for the county of Wayne, where the action was tried, took the case from the jury and ordered a verdict for defendant, and on the trial ruled out nearly all of plaintiff's evidence, most of which was undoubtedly admissible, if plaintiff could sue at all. We must therefore assume, what no doubt was the fact, that all the substantial rulings were made on the theory of an entire want of legal right. And a disposition of that question will dispose of the controversy hereafter, as there is no defense except on that theory.

In the spring of 1883 five Canadian gentlemen who desired to establish a line of steamers to navigate Lakes Superior and Huron, Georgian Bay, and adjacent waters, and to become incorporated for that purpose in accordance with the terms agreed on with plaintiff, obtained a charter for a term of years of the steamships Magnet and Spartan; and,

among other terms of the charter it was stipulated that the charterers should procure an incorporation with all convenient speed, and have a formal agreement and ratification executed by the incorporated company, and that during the entire term insurance should be kept up to the full value of the vessels, in companies to be approved by plaintiff, and in case of total loss the insurance money should replace the vessels, and the rent cease ; while in case of partial loss, plaintiff should pay over the insurance to the charterers received under any or all of the policies, in which the loss was made payable to plaintiff; and the lessees were, except in case of total loss, bound to restore the property at the end of the lease, in good order.

. An application was made in pursuance of this agreement by one of the charterers to Charles Perry of Toronto, who was endeavoring to get risks under an arrangement with Crosby & Dimick of Buffalo, general agents for defendant, there being reasons of economy which made it desirable to do the business outside of Canada, and save the necessity of compliance with the conditions imposed on such agencies. Perry himself made the applications to Crosby & Dimick who filled up and signed the policy and returned it to Perry who was to deliver it and look after the premium notes. The policy was delivered to or for plaintiff, immediately after its date. Perry, in making the application, as he testified, intended it to be for plaintiff. According to his view, as he swears, he was not holding a direct agency for defendant to act in Canada, as he would have been subject to a penalty for doing so without a license. But he was unquestionably acting in the employment and interest of defendant's general agents in Buffalo, and on their behalf in all that he did, and was paid his commissions and authorized by them to undertake risks.

The premium notes were not required or taken by Perry until June 21, 1883, which was two weeks after the incorporation of the charterers, and they were retained and paid at maturity to defendant. The loss was not known until a few days after these notes were given, and Perry at once

communicated with plaintiff, who gave notice in due time of the abandonment, which defendant accepted and acted on, as before stated, after defendant had taken proper steps to be represented on the survey.

On the 12th of May, 1883, Perry, acting apparently on his own motion, wrote to Crosby & Dimick, intimating his doubt concerning the regularity of the policy by reason of the charterers' having procured the insurance. On the 28th of May he wrote again, asking the issue of new policies, describing the various interests, to be made out to plaintiff, and stated he would return the old policies when he could get them back from Montreal, where plaintiff had its office. Crosby & Dimick replied the next day that it was unnecessary to write new policies, and that all necessary was an endorsement making them cover plaintiff's interest, which Perry was authorized to make and report. They also enclosed blank premium notes which they requested him to have filled out and returned. Perry, as before stated, obtained the notes, and all the other steps were taken, including the abandonment and acceptance, but he seems to have never called the attention of plaintiff to having the endorsements made, and this was not done.

We can see nothing in this policy which is inconsistent with its covering the interests as they actually stood, and while the proposed endorsement would have shown the precise condition of things on the policy itself, it was evidently not supposed by Crosby & Dimick that it would have changed the effect of the policy, or made a new one out of it. The Owen Sound Steamship Company, whose substantial identity was not destroyed by the incorporation, although formally merged in it, had undertaken such obligations to obtain insurance and to restore the property, as gave them a full insurable interest, whether any one else was mentioned or not. 2 Pars. Marit. Law 77, 78, and cases cited. There is no doubt of the common-law right of agents and bailees to insure under such circumstances for the full value of the property insured. *Waters v. Monarch L. & F. Ins. Co.* 34 E. L. & Eq. 116 : 25 Law J. (Q. B.) 102 ; *Crowley v. Cohen* 3

B. & Ad. 478; 3 Kent's Com. 262. And the authorities are clear that where the party thus insured in his own name receives all the insurance money, he must account for it to the real parties in interest. Id.

The policy here is inconsistent with the idea that it was meant to cover anything less than the entire vessel. No one could contract with reference to a total abandonment on any other basis. And the only question really is whether under this policy plaintiff can sue directly in its own name.

Upon this we have no doubt. This policy contains an express promise to pay the money to the plaintiff. It contains no reservation that plaintiff shall be paid according to the amount of any interest which may be shown, or any partial amount. The promise is unconditional to pay the whole of it. It was understood by the defendant that the insurance was in fact made for plaintiff's benefit, and it was really so made. A payment to plaintiff would absolve defendant from any duty to the Owen Sound Steamship Company, if any such duty existed.

Under such circumstances we think the defendant entered into contract relations which plaintiff has a right to assert directly. The case is in all substantial features the counterpart of *Hopkins Manuf'g Co. v. Aurora F. & M. Ins. Co.* 48 Mich. 148, where the beneficiary named was held authorized to sue for the insurance money as the legal payee. As we have so decided ourselves, we need not discuss the decisions elsewhere which were cited to the same effect.

In our opinion, the court below should have directed a verdict for the plaintiff, whose right was not open to any controversy on the undisputed facts, without reference to what was shut out.

The judgment should be reversed with costs and a new trial granted.

COOLEY, C. J. and SHERWOOD, J. concurred.