THE MICHIGAN MUTUAL LIFE INSURANCE COMPANY v. GEORGE D. REED.

*Insurance—Misrepresentations of agent—Rescission by assured—Premium note.*

A railroad switchman applied for insurance to an agent of a life insurance company whose powers were in no way restricted by the printed application; which the agent filled out, and a copy of which was delivered to the applicant with his policy. The applicant correctly stated to the agent his occupation, which rendered him uninsurable under the conditions of the policy, and the agent, in filling up the application, misstated such occupation, so as to avoid such conditions. And it is held that the assured, on discovering the fraud, had the right to rescind the contract of insurance, and show the facts as a

defense in a suit by the company upon a note given for the premium.

Error to Lenawee.    (Lane, J.)    Argued January 14, 1891.  Decided February 6, 1891.

*Assumpsit.*  Plaintiff brings error.  Affirmed.  The facts are stated in the opinion.

*J. C. Winne,* for appellant, contended:

1. If what defendant claims with regard to the misstatement of his occupation is true, it was no fraud upon him, but upon the company, which would have been estopped to deny liability, the application having been prepared by its agent, and the defendant not knowing of the false representations; citing *Pudritzky v. Knights of Honor,* 76 Mich. 428; *Temmink v. Insurance Co.,* 72 Id. 388; *Baker v. Insurance Co.,* 70 Id. 199; *Kitchen v. Insurance Co.,* 57 Id. 135; *Insurance Co. v. Lewis,* 30 Id. 41; *Insurance Co. v. Fay,* 22 Id. 467; *Insurance Co. v. Throop,* Id. 159; *Insurance Co. v. Olmstead,* 21 Id. 253; *Insurance Co. v. Hall,* 12 Id. 213.

2. The statement with reference to defendant's occupation, if incorrect, was immaterial.  A representation is material when its truth or falsity would probably and naturally have induced the insurer either to enter into the contract or refuse to do so; citing *Barteau v. Insurance Co.,* 67 N. Y. 595; and under the clause in the policy relating to the occupation of the assured, it is not his previous or present business, but his future calling, that affects the risk; hence it could have been no fraud on defendant, whatever his occupation was stated to be in the application, for by accepting the policy with a true copy of the application annexed he was plainly informed of his rights and obligations thereunder; citing *Insurance Co. v. Olmstead,* 21 Mich. 252; *Van Buren v. Insurance Co.,* 28 Id. 399; *McIntyre v. Insurance Co.,* 52 Id. 188; *Cleaver v. Insurance Co.,* 65 Id. 527.

3. Where ordinary care and prudence are sufficient for full protection, it is the duty of the party to make use of them.  Therefore, if false representations are made regarding matters of fact, and the means of knowledge are at hand and equally available to both parties, and the party, instead of resorting to them, sees fit to trust himself in the hands of one whose interest it is to mislead him, the law will leave him where he has been placed by his own imprudent confidence; citing

*Slaughter v. Gerson*, 13 Wall. 379; *Rockafellow v. Baker*, 41 Penn. St. 319; *Hobbs v. Parker*, 31 Me. 143; *Brown v. Leach*, 107 Mass. 364.

*Watts & Smith,* for defendant.

McGRATH, J. This is an action of *assumpsit*, brought in justice's court, upon a note given by defendant for a portion of the second semi-annual premium on a policy of insurance issued by plaintiff upon the life of defendant: Defendant, with his plea, gave notice that the signature to the note was obtained by fraud, and that the note was without consideration.

Defendant was a switchman in the employ of the Lake Shore road, at Adrian. One Vanderburg, an agent of plaintiff, who resided at Adrian, and had known defendant for some time, solicited the insurance, took the application, delivered the policy, and took some cash and three notes for the first year's premium. The policy was dated November 28, 1888. Two of the notes were paid, and defendant refused to pay the third, which matured about September 1, 1889. The application was filled out by Vanderburg, and presented to defendant for signature. Defendant insisted that Vanderburg had been acquainted with him for years, knew all about his occupation, and filled out the application largely from his (Vanderburg's) knowledge of the facts; that no questions were asked as to occupation, and defendant did not read the application before signing it, but relied upon Vanderburg; that defendant was a switchman engaged at the yard, and was upon and about trains as they were being made up; that the policy, with a copy of the application attached, was delivered to him in January, 1889; that some days afterwards, in examining the policy and copy of the application, he discovered that his occupation was given as "assistant yard-master, does no switching, don't go near trains;" that thereupon he called Vanderburg's attention

to this misstatement, and told him that he was not a yard-master, and that he did switching, and did go near trains; that thereupon Vanderburg took the policy for the purpose of sending it to the company for the purpose of correction; that afterwards Vanderburg returned the policy to defendant, saying that the change had been made, and that it was all right; that, supposing that the application had been changed to conform to the facts, defendant did not examine it for some time, but when he did finally examine it he found that it read "assistant yard-master, don't couple cars or do switching;" that upon this discovery defendant saw Vanderburg, accused him of again misrepresenting defendant, and told him that he (defendant) was not protected by the policy, and tendered it back to Vanderburg; that Vanderburg claimed that he had no right to receive it; that several conversations were had with Vanderburg, who finally advised him to send it back to the company, which he did on or about September 6, 1889. The application contained the usual printed clause, declaring—

"That the above are fair and true answers to the foregoing questions, and I hereby agree that these statements, with this declaration, shall form the basis of the contract for assurance, and that any untrue or fraudulent answers * · * * shall violate the policy, and forfeit all payments made thereon."

The policy provides in terms that "no agent has power to change the terms of this contract," and contains the further provision that—

"The person whose life is hereby insured shall not engage in blasting, * * * or be regularly employed * * * as a mariner, engineer, fireman, conductor, or laborer in any capacity * * * upon railroad trains."

The plaintiff requested the court to charge the jury as follows:

"1. You are directed to find a verdict for the plaintiff for the amount of principal and interest of note in issue.

"2. Even should you find that the agent, Vanderburg, wrote wrongfully the answers in the application for insurance by Reed, which untruthful answers were known to him, Reed, or not, this fact would not relieve the plaintiff from the obligation fixed in the policy; and, in case he should have died during any of the time, prior to the time fixed for the payment of the note, plaintiff would be obliged to pay the wife of insured $1,000, and hence defendant is liable on his note.

"3. There is no evidence before you that you can consider that will warrant you to find a verdict for the defendant."

The court refused these requests, and instructed the jury as follows:

"You are instructed, as a matter of law, that if Mr. Reed, in answering the question as to what his occupation was, said to Mr. Vanderburg that he was engaged in the yard there as a switchman, making up trains, and doing general work about the yards there in connection with trains, and Mr. Vanderburg put in his application, which was the foundation for the issuing of the policy, the statement that he did not go near the cars or do switching, then, I think, gentlemen of the jury, that that would be such a misstatement or fraud practiced upon the insured here as that he would be entitled to have these proceedings rescinded; that is, the policy and notes set aside and held for naught, from the time at least when such rescission should take place upon his part. *   *   * You will take all these circumstances into consideration; and if he did know it, but afterwards acted on the policy as if it was in force, and he was bound by it, and the company was bound by it, then he could not assert the defense which he is seeking to assert here; or if the agent, Mr. Vanderburg, put into this application the language as used by the defendant in stating what his occupation was, as he claims that he did, why then, of course, Mr. Reed would not have the right to assert that by way of defense to this note, because, if there was any fraud then, it would be the fraud of the defendant, and not the fraud of the company or its agent."

The jury brought in a verdict of no cause of action.

We think the court was correct, both in the refusal to give the plaintiff's requests and in the instructions given. The application here contained absolutely no restriction upon the powers of the agent. The applications are usually filled in in the handwriting of the agent, as was done in this case; and agents are nowhere in the blank prohibited from filling in the application. Indeed, on the face of the printed blank, the very first sentence is as follows: "This blank must be filled by the agent;" and again, in a blank left at the head of the printed blank, is the following:

"Agents will note here anything specially desired regarding the policy applied for, and to whom and where it is to be sent."

Although these appear in what might be termed the "caption" to the application, and not in the body of the application, yet to a person not familiar with these blanks it would be misleading if it is intended that the application is to be filled out by the applicant. Again, in the body of the application, is the following:

"N. B. Agents will be particular to see that all questions in the application are fully answered, particularly whether the age and date of birth agree."

Again, in the general printed declaration in the application, is the following:

, "It is hereby agreed that the policy shall not be in force unless the premium is actually paid to the company or its authorized agent."

At the bottom of the application are the following printed words: "Approved and recommended by (T. W. Vanderburg) agent;" the name of T. W. Vanderburg being written in in this case. At the head of the filing blank, upon the back of the application, occurs the following: "Agents will not fill up this filing." Vander-

84 MICH—34.

burg received the premium in notes and cash for the company, and must be considered the duly-authorized agent of the company. Had the blank been presented to and read over by the insured before it was filled in, there is nothing contained in it which did not warrant his acting with the agent, just as he claims he did. A copy of the application was attached to the policy, and delivered to defendant. The policy contains this provision: "No agent has power to change the terms of this contract;" and also the following:

" For the information of the assured, and in order that any unintentional errors or omissions which hereafter may be found to exist may be corrected, a copy of the application upon which this policy is based is hereto attached."

It must be conceded that the representation in the application as to the occupation of the insured is untrue, and, if made by the defendant, it would be a good defense to an action upon the policy. The court instructed the jury that, if made by the defendant, it would be no defense to the action upon the note. The jury found that it was not the act of the insured, but of the agent of plaintiff. It has been repeatedly held that, when an application is reduced to writing by an agent of the insurer, upon oral statements of the applicant, the conversation between the agent and the applicant at the time of putting it in writing is admissible as bearing on the question of the actual contents of the paper, or the representations of the insured; and that, when it appears that the insured fairly and correctly informed the agent as to any fact, and the agent unskillfully, carelessly, or fraudulently misrepresented the insured as to that fact, such unskillfulness, carelessness, or fraud is the unskillfulness, carelessness, or fraud of the company,

and is no defense to an action on the policy. *Mich. State Ins. Co. v. Lewis,* 30 Mich. 41; *North American Fire Ins. Co. v. Throop,* 22 Id. 146; *Crouse v. Insurance Co.,* 79 Id. 249, and cases cited. In *Aetna, etc., Ins. Co. v. Olmstead,* 21 Mich. 252, Mr. Justice COOLEY says:

"The agent of the insurance company assumed to have all the requisite knowledge for preparing the proper papers, and' volunteered to make them out. He had all the necessary information for that purpose, and nothing was concealed from him. If the application is not in due form, and if it fails to give all the information called for, it must be either because the agent was too ignorant of the business to be properly intrusted with the agency, or because he was so negligent or reckless that he did not trouble himself to draft them correctly, or, lastly, because he was disposed to take Olmstead's money on the fraudulent pretense of giving him indemnity when he knew he was giving none whatever.

"The general rule undoubtedly is that, in the absence of fraud, accident, or mistake, a party must be conclusively presumed to understand the force of his contracts, and to be bound by their terms. But it cannot be tolerated that one party shall draft the contract for the other, and receive the consideration, and then repudiate his obligation on the ground that he had induced the other party to sign an untrue representation, which was, by the very terms of the contract, to render it void. * * * The forms and requirements of different insurers are different, and when an agent, who at the time and place is the sole representative of the principal, assumes to know what information the principal requires, and, after being furnished with all the facts, drafts a paper which he declares satisfactory, induces the other party to sign it, receives and retains the premium moneys, and then delivers a contract which the other party is led to believe, and has a right to believe, gives him the indemnity for which he paid his money, we do not think the insurer can be heard in repudiation of the indemnity on the ground of his agent's unskillfulness, carelessness, or fraud. If this can be done, it is easy to see that community is at the mercy of these insurance agents, who will have little difficulty, in a large proportion of

the cases, in giving a worthless policy for the money they receive."

In the present case, upon the discovery of the fraud defendant had the right to rescind the contract. He wa, not bound to subject the beneficiary named in the policy to a lawsuit after his death, to determine the validity of the policy, especially as in that event his testimony would be wanting. Again, it is not claimed here that the company had actual notice of the facts as to defendant's occupation, but that it had constructive notice only; but it must be remembered that a copy of the application was attached to the policy, and delivered to the defendant, in which case, under the express provisions contained in the policy relating to the correction of "unintentional errors or omissions" in the application, it was defendant's duty to call attention to this misrepresentation, otherwise the defendant might have been chargeable with a fraud upon the company; for while the company would not be able to avoid a policy by reason of the rule of law that its agent's wrong was the company's own wrong, of which it could not take advantage, it would be otherwise had the insured conspired with the agent, or had the insured been fully informed as to the representations made, and the contents of the application, and neglected to bring it to the attention of the company.

The judgment is affirmed, with costs of both courts to defendant.

The other Justices concurred.