———o———

JOHN K. MINNOCK v. THE EUREKA FIRE & MARINE INSURANCE COMPANY.

*Fire insurance—Loss payable to mortgagee—Action on policy—Conditions—Pleading—Authority of agent.*

1. An insurance policy provided that in case of a loss the insurance should be paid to a mortgagee, therein named, as his mortgage interest might appear, which provision was inserted pursuant to an agreement of the mortgagor, under which the policy was to be delivered to and held by the mortgagee until the mortgage was paid, and he was authorized to effect such insurance in case of a failure on the part of the mortgagor so to do. And it is held that the right of action in case of a loss was in the mortgagor; citing *Van Buren v. Insurance Co.,* 28 Mich. 398, 404; *Insurance Co. v. Manufacturing Co.,* 31 Id. 346; *Insurance Co. v. Davenport,* 37 Id. 609.

2. The defense in an action upon an insurance policy that the application contained a misrepresentation as to the amount of the incumbrances upon the property is one which the company has a right to waive, and a failure to give notice of such defense justifies the rejection of testimony in support thereof; citing *Insurance Co. v. Curtis,* 32 Mich. 402, 403.

3. Where an insurance company fails to give notice that it will show as a defense in a suit on the policy misrepresentations

in the application as to the amount of incumbrances on the property, which application has been in its possession for two years, the discretion of the trial court in denying a motion to amend, made on the trial, by giving such notice, will not be reviewed; citing *Souvais v. Leavitt*, 53 Mich. 577.

4. When a written and a printed clause appear in a policy of insurance, relating to the same subject,—the former in a prominent place, and associated with the other written provisions of the policy, and the latter in small type, and therefore obscure,—the intention of the parties will be sought for in the written rather than in the printed provision.

5. "Where a local agent has authority to issue policies himself, the applicant for insurance, in the absence of fraud, may generally deal with him as he would with the officers of the insurance company, and rely on his conduct as he could on theirs." *Richards v. Insurance Co.*, 60 Mich. 420, 427.

6. It would be unconscionable to say that the insured in such a case, where no written indorsement consenting to additional insurance was required by the terms of the policy, was not warranted in communicating with the company through its agent, and relying upon his representations.

7. Where an insurance company has actual notice of the existence of a mortgage on the insured property, and the policy provides just what action relating to such mortgage shall invalidate the policy, namely, the passing or entering of a decree of foreclosure, any possible inference is excluded that anything short of the decree will have that effect.

Error to Livingston. (Newton, J.) Argued January 22, 1892. Decided February 5, 1892.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*Clarence Tinker,* for appellant.

*Luke S. Montague,* for plaintiff.

McGRATH, J. This is an action upon a fire insurance policy.

With its plea of the general issue, defendant gave notice:

"1. That said plaintiff never had any valid or legal

policy of insurance or contract of insurance with said company, and that said company was never legally bound to pay any sum of money on said contract or policy declared on by said plaintiff in his declaration.

"2. That said plaintiff has failed to make the necessary proof provided for and agreed to in said policy, and has failed to furnish the same to said company, as required in policy issued by said company.

"3. That said contract or policy of insurance is void for the following reasons: That said plaintiff had permitted a suit to be commenced and carried on for the purpose of foreclosing a mortgage on said property covered by said policy of insurance, as claimed by said plaintiff, and that, according to the condition of said policy, it made the same void, being contrary to the conditions thereof, and gave no notice of the same to defendant, and that the said policy became and was void in consequence of the property insured becoming involved in litigation without notice to said company, and became and was void because the same was in litigation at the time said policy was issued, and no notice thereof given said company."

The policy was dated December 20, 1888, and was to run three years. The fire occurred March 25, 1890. Proofs of loss were furnished June 3, 1890. Suit was commenced in August, 1890. The trial was had in January, 1891. Plaintiff recovered, and defendant appeals.

1. The first question raised is that by the terms of the policy, and of an agreement between the plaintiff and the mortgagee, the right of action was vested in the mortgagee, and did not exist in plaintiff. The policy was taken out and the premium paid by plaintiff. The policy provided that the companies named "do each insure John K. Minnock against loss or damage by fire to the amount of one half part of the sum of $2,500," and contained the clause, "loss, if any, payable to Rufus Cate, mortgagee, as his mortgage interest may appear." In an agreement extending the time for the payment of the mortgage debt, entered into between plaintiff and the mortgagee, this clause appears:

"And it is also agreed that said John K. Minnock, so long as the money secured by said mortgage shall remain unpaid, shall and will keep the mortgage interest of the said Rufus Cate or his assigns in the buildings insured against loss and damage by fire by insurance in amount and manner approved by the said Rufus Cate. And the policy of insurance shall be delivered to the said Rufus Cate, to be held by him until said mortgage is fully paid. In default thereof it shall be lawful for the said Rufus Cate" to insure, etc.

This question is settled by *Hartford Fire Ins. Co. v. Davenport,* 37 Mich. 609; *Van Buren v. Insurance Co.,* 28 Id. 398, 404; *Clay F. & M. Ins. Co. v. Manufacturing Co.,* 31 Id. 346.

The case of *Richelieu & O. Nav. Co. v. Insurance Co.,* 58 Mich. 132, differs from the present case. There the Richelieu & Ontario Navigation Company was the owner of a vessel which the Owen Sound Steam-Ship Company chartered for a term of years, and the charterer agreed with the owner to procure insurance, and that in case of total loss the insurance money should replace the vessel, and the rent cease, while in case of partial loss the charterer was bound to restore the vessel. Defendant by the policy insured the vessel "on account of Owen Sound Steam-Ship Company, loss, if any, payable to the Richelieu & Ontario Navigation Company." The charterer procured the insurance and paid the premium. The Court say:

"This policy contains an express promise to pay the money to the plaintiff. It contains no reservation that plaintiff shall be paid according to the amount of any interest which may be shown, or any partial amount. The promise is unconditional to pay the whole of it. It was understood by the defendant that the insurance was in fact made for plaintiff's benefit, and it was really so made."

In the present case, whatever plaintiff and the mortgagee may have intended by their agreement, the policy

did not run to Cate, nor did it insure his interest only. Plaintiff procured the insurance and paid the premium.

2. It was claimed by defendant that the application for the policy of insurance contained a misrepresentation as to the amount of the incumbrances upon the property, but objection was made that defendant's notice did not set up such misrepresentation, and the court excluded testimony tending to show that fact. ·This precise question was raised in *Home Ins. Co. v.· Curtis,* 32 Mich. 402, 403; and the Court held that—

"The defense was one which the company had a right to waive, and the fact that no notice of such a defense was attached to the general issue would give counsel·for plaintiff to understand that the company did not intend to rely upon any such breach, and would be likely, therefore, to prevent the plaintiff's counsel from making such preparation upon that point as they otherwise might do."

Defendant asked leave to amend the notice, and the court refused to grant it; but the discretion of a trial court in denying a motion to amend a plea will not be reviewed unless that discretion has been abused. *Souvais v. Leavitt,* 53 Mich. 577. The application had been in the hands of defendant for two years. There was no claim that it had but recently learned of the existence of this mortgage. Plaintiff had been led to believe that any defense, so far as·the matters set forth in the application were concerned, had been waived by the defendant.· It does not appear to us that the discretion of the trial court has been abused.

3. It is next contended that the policy was invalid because plaintiff took out other insurance without the written consent of the companies written on the policy. The policy provides that—

"If the assured shall have or shall hereafter make other insurance on the property hereby insured, or any

part thereof, whether valid or not, without the consent of the companies written hereon, * * * this policy shall be void."

The provision referred to is printed in small type among the conditions of the policy. On the face of the policy the following clause is written in:

"No other insurance on above risk allowed unless by consent of this insurance company."

This clause must have been designedly written in, and very probably as the result of some conversation upon the subject. The written clause has no office to perform, unless it is to change the terms of the printed provision relating to the same subject. When a written and a printed clause appear in a policy of insurance, relating to the same subject,—the former in a prominent place, and associated with the other written provisions of the policy, and the latter in small type, and therefore obscure,—the intention of the parties will be sought for in the written provision, rather than in the printed. Here the printed clause invalidated the policy, unless the consent of the company was indorsed upon the policy, and the written clause did not require the consent to be indorsed upon the policy. One Phillips was the local agent of the defendant company. The company furnished to Phillips blank policies, which he issued when applied for, without reference of the application to the home office, and made daily reports to the company of the written provisions of the policies issued; and it appeared that the written clause above referred to was actually reported to the home office. The policy contained the following printed clause:

"It is further understood, and made a part of this contract, that the agent of the companies has no authority to waive, modify, or strike from this policy any of

90 MICH.—16.

the printed conditions, nor is his assent to an increase of the risk binding upon the companies, until the same is indorsed in writing on the policy, and the increased premium paid."

In the present case, however, the written clause was assented to by the company, and the taking of other insurance is not within the increased risks referred to.

In January, 1890, plaintiff applied to Phillips for $1,-000 additional insurance. Phillips told him that he would have to write to the company and get its consent, and in a few days Phillips informed plaintiff that he had done so. He then placed the risk in the Farmers,' of York, Penn.

It was said by Chief Justice CAMPBELL in *Richards v. Insurance Co.*, 60 Mich. 420, 427, that—

"Where a local agent has authority to issue policies himself, the applicant for insurance, in the absence of fraud, may generally deal with him as he would with the officers of the insurance company, and rely on his conduct as he could on theirs."

It would be unconscionable to say that the insured in such case, where no written indorsement was required by the terms of the policy, was not warranted in communicating with the company through its agent, and relying upon the agent's representations. In *Westchester Fire Ins. Co. v. Earle*, 33 Mich. 148, the Court say:

"The charges given, under which the recovery was had, were in substance as follows: That in order to escape the condition the insured must show that the agent had done some act or made some representation, or remained silent when he ought to have spoken, and thereby misled the insured, and induced them to rely on the policy to their injury, and, by causing them to believe the policy remained in force, prevented their seeking other insurance, and that such conduct would preclude the company from setting up the condition, and that notice to the agent was notice to the company."

In that case other insurance was procured, and afterwards the insured wrote to the company's agent, " informing him of the precise amount of the additional insurance on the machinery, and stating in detail all the policies which they held, including the one in controversy, amounting, with the new policy, to $7,500, which they said was all they cared to insure on the machinery. In the same letter they ask for terms of insurance on the stock in the building. Very shortly thereafter, Earle met Atwater, who at once referred to the new insurance, and asked why it had been placed with the other insurers and not with him, and was told it was because it was got on cheaper terms. In this and in following conversations about the same time no objection was made, and no suggestion offered that any breach of condition had been created, or would be relied upon. Atwater said he considered the risk of $7,500 on the machinery then owned as equivalent to the original $5,000 on what was owned before. No further objection was ever made, and proof of loss was made, as required, to the adjusters."

Referring to this testimony, the Court say:

" Upon this testimony,—which the jury had the right to believe, and which they appear to have believed,—it is beyond question that Earle and Reynolds relied, and had reason to rely, on the validity of their insurance, and to assume that nothing had been done to destroy it. If Atwater himself had been the insurer, it would be difficult to find a plainer case of estoppel. It would have been a direct fraud to repudiate an obligation after such conduct as could not have failed to induce the insured to rest satisfied with their policies.".

Again, the proofs of loss set forth fully this further insurance, and the adjuster for the Farmers' Insurance Company acted with defendant's agent in adjusting the loss, and the only defense set up until the suit was the foreclosure proceedings, and after commencement of suit

the failure to make proofs of loss. In *Castner v. Insurance Co.*, 50 Mich. 273, 275, GRAVES, C. J., says:

"Such was the position when the suit was instituted, and the company were not at liberty thereafter to vary their ground, and offer new or additional objections." See *Richards v. Insurance Co.*, *supra.*

4. The defendant insists that no proofs of loss were furnished to the defendant company. The policy purports to be issued by "The Cincinnati Underwriters." It reads:

"By this policy of insurance, the Eureka Fire & Marine Insurance Company and the Security Fire Insurance Company, both of Cincinnati, O., each acting and contracting for itself, and not one for the other,   *   *   * do each insure   *   *   *   and each of said companies agrees to make good to the assured, his executors, administrators, or assigns, all such immediate loss or damage, not to exceed in amount the sum insured,   *   *   * to be paid sixty days after due notice and proof of the same   *   *   * is received at the office of the companies in the city of Cincinnati.   *   *   * In case difference shall arise touching any loss or damage,   *   *   * the matter shall   *   *   * be submitted   *   *   * to arbitrators,—one to be chosen by the assured and one by the companies.   *   *   * Persons sustaining loss or damage   *   *   * shall forthwith give notice   *   *   * to the companies in the city of Cincinnati.   *   *   * And the said companies respectively agree that, in case the assured shall have to resort to judicial proceedings for the purpose of enforcing his claim under this policy, it shall not be necessary for him to proceed against each of them, but he may bring this action against either of them, and that the other shall be bound and concluded by the result of such action in the same manner and to the same effect as if it had been prosecuted against each of them separately, with a like result.   *   *   * It is further understood and agreed, by and between the parties hereto, that nothing herein contained shall be construed as creating or importing any joint liability on the part of the above-named companies, but that each of the said companies shall be regarded as only severally liable upon this policy for the amount insured by each under the same."

The policy is executed by John Kyle, president, and F. A. Rothier, secretary, Eureka Fire & Marine Insurance Company, and John Kyle, president, and F. A. Rothier, secretary, of the Security Fire & Marine Insurance Company, and is "countersigned by Chas. H. Phillips, Agent at Fenton." The proofs of loss were sent under the direction of Charles. H. Phillips, the agent of the defendant; the envelope containing them being in fact addressed by Phillips. It was addressed to Adam Benius, Cincinnati, Ohio, and the registry return receipt was as follows:

"Received the above-described registered letter.
                    "CINCINNATI UNDERWRITERS.
"ADAM BENIUS, Secretary."

The proofs were deposited in the office by the defendant's attorney, and the return receipt received by plaintiff through said attorney. Adam Benius was, at, the time the proofs were received, secretary of both insurance companies, and testified that said companies did business together under the name of the Cincinnati Underwriters. The proofs were received and turned over to Rothier, who was president of both companies, and who had charge of the loss department. The daily reports sent by Phillips were addressed to the Cincinnati Underwriters. Notice of the loss was given to Phillips; and, at the instigation of Phillips, Klockseim, adjuster for the companies named in the policy, came on with one De Forest, adjuster for the Farmers', and examined into the circumstances of the fire. While so engaged an agreement for arbitration was prepared by Klockseim, and executed by plaintiff, and the "Cincinnati Underwriters, by H. C. Klockseim." The agreement was headed: "The Cincinnati Underwriters' Insurance Company of Cincinnati, Ohio. Agreement for submission to appraisers." It was thereby agreed between plaintiff, of

the first part, "and the Cincinnati Underwriters' Insurance Company, of the second part." The oath taken by the appraisers was impartially to appraise the property insured by the "Cincinnati Underwriters," and their report was made to the "Cincinnati Underwriters." It is unnecessary to do more than recite these facts in answer to defendant's contention.

5. The defendant insists that the contract is void for the third reason set up in the notice attached to defendant's plea. The policy provided that it should be void "upon the passing or entering of a decree of foreclosure, or upon a sale under a deed of trust." It is sufficient to say that, at the date of the fire, no decree had been passed or entered, nor had any sale been had.

Defendant, however, contends that the commencement of the foreclosure proceedings increased the hazard, and that plaintiff concealed the fact. The policy provides that it shall be void in case of any—

"False representations by the assured of the condition, situation, or occupancy of the property, or any omission to make known every fact material to the risk, *   *   * or if the premises shall at any time be occupied or used so as to increase the risk, or the risk be increased by the erection of a neighboring building, or by any other means whatever, within the control of the assured."

The representations and concealments referred to are those attending the inception of the policy, and the increased risks contemplated are those arising from changed physical conditions.

In *Michigan State Ins. Co. v. Lewis,* 30 Mich. 41, the policy provided that "if any proceeding for sale shall be had, commenced, or taken" without the consent of the company, the policy should be void. Yet Mr. Justice COOLEY, speaking for the Court, says:

"But we are all of the opinion that where insurance is taken upon mortgaged property, and the insurer is

notified of the mortgage, and of course understands that proceedings may at any time be taken to foreclose it when the mortgage is overdue, as seems to have been the case when this insurance was taken, it would be a most unreasonable and unjust construction of such a provision to hold that by the mere commencement of foreclosure proceedings the policy would be annulled."

In the present case the company had actual notice of the existence of the mortgage; and, the policy having provided just what action relating to such mortgage should invalidate the contract, it excludes any possible inference that anything short of the decree would invalidate the policy.

The views expressed render it needless to go over severally the assignments of error, which are all covered by them.

The judgment must be affirmed, with costs to plaintiff.

MORSE, C. J., LONG and MONTGOMERY, JJ., concurred. GRANT, J., did not sit.