FANNY R. S. BALEN v. THE HANOVER FIRE INSURANCE
COMPANY.

*Fire insurance—Bill to reform policy—Mistake.*

A bill will lie to reform an insurance policy issued to *protect a mort-
    gagee's interest* where, by a mutual mistake, the name of the
    occupant and supposed *owner* of the premises was inserted as
    *such* in the policy, neither party having *actual* notice or knowl-
    edge of an *adverse* title growing out of an execution sale, to set
    aside which a suit was *then* being prosecuted by such occupant,
    but the insurance agent being informed that the title to the
    property was in dispute.

Appeal from Bay. (Green, J.) Argued June 8 and 9,
1887. Decided October 13, 1887.

Bill to reform an insurance policy. Defendant appeals.
Decree affirmed. The facts are stated in the opinion.

*J. L. Stoddard,* for complainant.

*Norris & Norris,* for defendant.

CHAMPLIN, J. The controversy in this case is contained
within a narrow compass.

The bill is filed to correct and reform an insurance policy.

The complainant is the holder and owner of a mortgage
covering premises upon which was situated a hotel known as
the "Robison House," in Roscommon, Michigan. It was
executed March 20, 1879, by Mary E. Gordon, who was then
the owner in fee of the premises, to secure to Robert D.
Robison the payment of $1,500, and interest at 10 per cent.,
one year from its date. It contained a clause binding the
mortgagor to keep the mortgage interest of the mortgagee,
or his assigns, in the buildings on the premises, insured

against loss or damage by fire, so long as the moneys secured remained unpaid.

This mortgage and the note thereby secured were assigned by the mortgagee to the complainant on the twenty-third day of August, 1880.

After the execution of the mortgage, the mortgagor, on the twelfth day of May, 1879, conveyed the premises to John Gordon, and in October following Gordon and wife conveyed to Roderick McDonald, and afterwards, in August, 1880, McDonald conveyed the same to Mary E. Gordon, who, on the sixth day of February, 1882, conveyed to Mary McDonald, who went into the possession thereof, and so continued by herself and tenants until the time of the fire as hereinafter stated.

The mortgage interest of Mrs. Balen had been kept insured by the respective owners until the seventh day of December, 1883. The policy which expired at that time had been issued to Mary McDonald as owner, with a clause, stating: "Loss, if any, payable to Fanny R. S. Balen, mortgagee." In 1883, Mrs. Balen and her husband were in Europe, and the owner of the premises neglected to insure on the expiration of the policy last mentioned.

In the fall of 1884, Mr. Balen returned to look after certain interests of his wife, and learned that the insurance for the benefit of Mrs. Balen had not been kept up. He applied to the agent of defendant at Bay City for insurance upon Mrs. Balen's mortgage interest in this property. The agent, John Drake, testifies to what occurred as follows:

"*Q.* Do you remember Mr. Balen applying to you to issue a policy of $1,500 on what is known as the 'Robison House' at Roscommon?

"*A.* Yes, sir; very well.

"*Q.* State, if you please, what took place at that interview, using your own language.

"*A.* Mr. Balen at that time wanted me to write a policy direct to Mrs. Balen for her mortgage interest, which I told

him that I could not do, but that I could write it in the name of the owner, whoever it might be, and make the loss, if any, payable to Mrs. Balen as mortgagee, which would be equally as good, if not better, than if it ran to herself. It would save double insurance.

"*Q.* What did he have to say to that ?·

"*A.* He agreed to take it in that way.

"*Q.* And was, it in pursuance of that agreement, as you have detailed it, that this policy was made out?

"*A.* I don't know that it was an agreement. I guess it was made in regard to the condition of the policy. I requested this to be written out in this form.

"*Q.* Did you ask Mr. Balen who the owner of the property was ?

"*A.* I had to, as a matter of course.

"*Q.* Who did he tell you was the owner of the property ?

"*A.* He told me that Mrs. Mary McDonald was the owner.

"*Q.* Did he say anything to you about who was in possession of it ?

"*A.* No; he said it was occupied by a tenant at the time —that Mrs. McDonald—it was Mrs. McDonald's tenant, as I understood. I could not naturally infer anything else than that the tenant was under Mrs. McDonald."

On cross-examination he further testified as follows:

"*Q.* Mr. Balen told you that he wanted to protect the mortgage interest of his wife when he applied for the insurance?

"*A.* Yes, sir.

"*Q.* You understood that distinctly?

"*A.* I understood that distinctly.

"*Q.* And you explained to him, as I understand you, that this was the form that it should be written in for that purpose?

"*A.* I told him that it was the only way in which I could write the policy to protect the mortgagee's interest; that I could not write it directly to them.   *   *   *

"*Q.* Your object and intention in writing the policy in this case was simply to protect Mrs. Balen's interest, was it not ?

"*A.* I stated that before with regard to the circumstances under which Mr. Balen asked me to insure.   *   *   *   The question was, he wanted to cover Mrs. Balen's interest, and I did so to the best of my knowledge under the circumstances."

He further testified that he could not remember distinctly what was said about the ownership ; that he could not recall it, and did not remember whether or not Mr.. Balen showed him the old policy in the Shoe & Leather Company, which had expired; but, after refreshing his memory from the examination of a paper, he testified that Mr. Balen told him there was some dispute there about the title, and in reply to his question stated that Mrs. McDonald was the owner and in possession.

There is not much dispute upon the main facts between this witness and Mr. Balen.   He testifies that he requested an insurance to cover and protect the mortgage interest of his wife, and requested a policy running directly to her, and that the agent told him he could not do it in that way, but the better way would be to insure in the name of the owner, with the loss payable to Mrs. Balen as mortgagee, and this would effect the same thing.   He says that he was asked in whose name the policy should be, and that he told him that he did not know; that he told him that the last policy that he had, and to the best of his knowledge it was just the same ; that he gave him the old policy; that he told him that Mrs. McDonald was in possession of the property, and, so far as he knew, the title was in her, and that he knew nothing about it, and was not interested, only so far as the mortgage was con- cerned, which antedated all the disturbances that they might have between themselves : that he referred the matter entirely to them to procure the insurance, and they did so.

It is an admitted fact in the case that at the time this insurance was applied for, and from that time down to the time the fire occurred, Mary McDonald was in possession of the property, claiming to be the owner of it.

The fire occurred on the seventeenth of January, 1885, which destroyed the property.

. The property insured was worth between two and three thousand dollars, and the amount secured and unpaid upon

the mortgage exceeded the sum insured by the policy in suit.

The insurance company refuses to pay the loss to Mrs. Balen, for the reason that Mary McDonald was not the owner of the property at the time the insurance was effected.

It appears that while the title to the premises was in Roderick McDonald, in 1880, it was levied upon by virtue of an execution against him issued out of the circuit court for the county of Wayne upon a judgment in favor of George O. Robison and David W. Brooks, and was afterwards advertised and sold on the twenty-second day of November, 1881, to George O. Robison, who received the sheriff's certificate of sale. The premises were not redeemed, and the title became apparently absolute in Robison, February 24, 1883, and he received the sheriff's deed that day, and he, on April 30, 1883, conveyed the premises to Frederick A. Robison.

On April 23, 1884, Mary McDonald filed her bill of complaint in the circuit court for the county of Roscommon, in chancery, against George O. Robison, David W. Brooks, and Frederick A. Robison, to set aside said sheriff's deed as a cloud upon her title, setting forth certain irregularities and illegalities in the sale, and offering to redeem from the levy.

The defendants filed their answers June 13, 1884, and the cause was put at issue by filing replication June 25, 1884, and was pending and undisposed of at the time the policy in suit was issued; and at this time neither Mrs. Balen nor her agent, Mr. Balen, nor defendant or its agents, had any actual notice or knowledge of the sheriff's levy or deed, or the subsequent conveyance to Frederick A. Robison, although Mr. Balen knew, or had been informed, that the title was in dispute, and so informed defendant's agent at the time the insurance was applied for. The suit proceeded to a decree, when, on the thirteenth day of January, 1885, a decree was entered dismissing Mary McDonald's bill of complaint.

Such are the material facts upon which the complainant's

equity rests; and we think it clear that she is entitled to the relief prayed. The complainant's agent called upon defendant to insure her mortgage interest. The defendant undertook to do so, and pointed out the way in which it should be accomplished, namely, that the policy should be issued in the name of the owner of the premises, with the loss, if any, payable to Mrs. Balen as mortgagee. This method, defendant by its agent represented, would be as effectual as to have the policy run directly to Mrs. Balen, and a safer way to protect her interest, as it would avoid the danger of double insurance. The prime object was the insurance of the mortgagee's interest as such. They had no thought or intention of effecting insurance for the benefit of the owner, nor was it designed that the owner should have any interest in such insurance whatever. The insurance was not paid for by the owner, but by the complainant. The owner's name was inserted as a mere formal matter without significance, for the purpose of effecting an insurance of Mrs. Balen's mortgage interest. The important fact affecting the risk was communicated; namely, that the title was in dispute. So far as the owner's name was at all material to carry out the purpose intended, both parties were laboring under a mutual mistake of facts.

Both agreed, at least, in assuming that Mrs. McDonald was the owner; and had they known the exact situation at the time, they would have been justified in regarding her as the owner. She was in possession, claiming title. She had filed a bill to remove the sheriff's deed as a cloud upon her title, and no one situated as the complainant and defendant were could determine whether she would succeed in her suit or not. Suppose they had inserted Robison as owner, and she had succeeded in her suit, we should have had the same defense interposed against payment of the loss, or at least we might have had. It would have been as meritorious as a defense in that case as it is now. The unavoidable result of

the position now assumed by defendant would have compelled complainant, to use a familiar simile, to sail between Scylla and Charybdis, with a probability of running upon one rock or the other, and suffer shipwreck of her mortgage interest. She was obliged to name the owner correctly at her peril; and name which she would, the uncertain outcome of a lawsuit might render her contract valueless.

It was unimportant, under the facts of this case, whose name was inserted in the policy as owner. Whosever name was inserted stood there merely as a nominal party, without any beneficial interest in the insurance secured thereby. Many cases have arisen where courts have extended relief under circumstances analogous to this, but no case has been adjudicated where the complainant's equities are stronger or better entitled to the favorable consideration of the court than this.

The decree of the circuit court is affirmed, with costs of both courts.

The other Justices concurred.