GOURLAY v. INSURANCE CO. OF NORTH AMERICA.

INSURANCE — BREACH OF CONDITIONS — TRANSFER OF INTEREST — VENDOR AND PURCHASER.

After breach of a contract for the purchase of real and personal property covered by insurance, and after the vendee had assigned his interest in the policy to the vendor, canceling the land contract and assigning all interest in the policy to him, the defendant insurance corporation, which had notice of the transaction, is *held*, by an equally divided court, to be liable on the policy upon which it had indorsed a clause stipulating that the vendee held the property under contract, and the loss, if any, should be payable to plaintiffs and vendee as their interests might appear. MCALVAY, C. J., and STONE, OSTRANDER, and STEERE, JJ., dissenting, on the ground that a material change of interest had occurred, avoiding the policy.

Certiorari to Eaton; Smith, J. Submitted Novem-

ber 19, 1913.   (Docket No. 156.)   Decided July 24, 1914.   Rehearing denied December 19, 1914.

Assumpsit by Joseph G. Gourlay and Mary L. Gourlay against the Insurance Company of North America upon a contract of insurance. An order overruling a demurrer to plaintiffs' declaration is reviewed by the defendant on writ of certiorari. Affirmed.

*Cummins & Nichols*, for plaintiffs.

*Henry C. Walters* (*Arthur P. Hicks*, of counsel), for defendant.

MOORE, J. The following statement of facts is made by the attorney for defendant:

"The defendant asks for a review by certiorari of an order overruling a demurrer to the plaintiffs' declaration made by the circuit court for the county of Eaton. The declaration alleges: That the policy in question was issued on certain farm buildings and personal property (the contents of said buildings) to one M. S. Harkness, on April 20, 1911. That subsequently, on October 21, 1911, with the consent and approval of defendant, the land and appurtenances were deeded to plaintiffs, and that afterwards M. S. Harkness and wife repurchased the land and appurtenances on land contract. That at about the time of the foregoing transfers the following indorsement was made on the policy in suit: 'It is understood and agreed that M. S. Harkness holds this property under contract of purchase, loss, if any, payable to Joseph G. Gourlay and Mary L. Gourlay, and M. S. Harkness as their respective interests may appear.' That on May 25, 1912, all the interest of Mrs. Harkness was set over to M. S. Harkness. That afterwards M. S. Harkness defaulted in the land contract, and it became forfeited by its terms, whereupon M. S. Harkness, on August 13, 1912, submitted to a cancellation of the land contract, deeded the premises constituting the real property, which is the subject of insurance, to the plaintiffs, at the same time giving to the plain-

tiffs a bill of sale of the personal property, so that after August 13, 1912, neither M. S. Harkness nor his wife had any interest in the subject of insurance. The declaration alleges notice to the defendant of these transfers, but it does not allege consent thereto.

"The plaintiffs further allege that on August 31, 1912, 'the said M. S. Harkness did assign to the plaintiffs all his interest in said policy as vendee in said land contract, or as owner of the property covered by said policy of insurance, subject to the consent of the defendant herein.' The declaration does not allege that the defendant ever consented to this alleged assignment to the plaintiffs by M. S. Harkness. It merely says: 'All of which said defendant had notice.'

"The plaintiffs allege that the property was burned 'on the night of the 31st of August, 1912,' causing a loss of $1,694.00 of which the defendant was notified on October 31, 1912, and March 6, 1913.

"The defendant demurred to the declaration, and the circuit court overruled the demurrer.

"Error is assigned in the affidavit for the writ of certiorari, on the action of the circuit judge in overruling each of the several grounds of demurrer."

Counsel say:

"The following questions are raised by the demurrer and the assignments of error:

"(1) The plaintiffs, under the allegations of the declaration, are not entitled to maintain this suit.

"(2) The declaration shows, on its face, such a change of title, ownership, and possession of the subject of insurance, without the consent of the defendant, as avoids the policy.

"(3) The declaration does not allege consent of the defendant to change in the title, possession, and ownership of the subject of insurance.

"(4) The policy of insurance sued upon constitutes an entire contract covering personal property and real estate, and the change in the title, ownership, and possession of the personal property, without the consent of the defendant, invalidated the policy.

"(5) The declaration does not allege notice to the defendant, prior to loss, of change in title, ownership, and possession of the property which was the subject of insurance."

Before taking up these questions we think the statement of facts should show that a copy of the land contract was attached to the declaration and made a part thereof. This contract is dated October 28, 1911. It contained, among others, the following provisions:

"*Second.* The said parties of the second part, in consideration of the covenants herein contained on the part of the said parties of the first part to be performed, agree to purchase of the said parties of the first part the above-described land and to pay for the same to the said parties of the first part, or their legal representatives, the sum of two thousand seven hundred and thirty dollars, lawful money of the United States in manner follows, that is to say: One hundred and fifty dollars on July 1st, 1913; two hundred dollars on July 1st, 1914; and not less than two hundred dollars on July 1st of each and every year thereafter until the full sum of said $2,730.00 is wholly paid, with interest at the rate of 6 per centum per annum, payable annually on the 1st day of July in each year on the whole sum that shall from time to time remain unpaid, both principal and interest to be paid at the First State Bank of Petoskey, in the city of Petoskey, State of Michigan; and also that they will keep all buildings now on, or that may hereafter be placed on, said premises insured for the benefit of, and in the manner and amount and by insurers approved by, first parties, and leave the policy with first parties, and in case of loss, the insurance, unless by mutual agreement used to repair or rebuild, shall be paid to the first parties, and be indorsed on this contract to the extent of the amount unpaid thereon, and the balance, if any, shall belong to the said parties of the second part; and also that they will enter said premises for taxation in the name of second parties; and so long as any part of the principal or interest of the said consideration money remains unpaid, well and faithfully, in due season in each and every year pay, or cause to be paid, all taxes and assessments, ordinary and extraordinary (including the taxes due in December, A. D. 1910), that may for any purpose whatever, be levied or assessed on said premises, and that they will not commit, or suffer any other person

181 Mich.—19.

to commit, any waste or damage to the said lands, or the appurtenances, except for firewood for their own use and consumption upon said premises, and except while clearing off the lands for cultivation in the ordinary manner; and in no event shall any standing timber measuring five inches (or over) in diameter, at the butt, be cut down, or removed from said premises. And should second parties fail to pay any tax or assessment when due, or to keep said buildings insured as above provided, first parties may pay such taxes, and may have the buildings insured, and the amounts thus expended shall be a lien on said premises, be added to the amount of the consideration money then unpaid hereon, be due at once, and bear interest until paid at the rate of 7% per annum."

The questions involved may be divided into three groups:

(1) Does the loss payable clause create contract relations between plaintiff and defendant?

(2) Was the policy forfeited prior to the loss because of a change of title or interest in the property insured without the consent of defendant?

(3) Was the assignment of the policy to plaintiffs before the loss without the consent of the defendant of no effect?

1. It is urged under this head that the vendor under a land contract is not the unconditional owner, and that his interest in the insurance is only as security for his debt, and that it is the vendee who is the insurer, and the vendor cannot maintain a suit against the insurance company, citing *Van Buren* v. *Insurance Co.*, 28 Mich. 398; *Hartford Fire Ins. Co.* v. *Davenport*, 37 Mich. 609; *Clay Fire, etc., Ins. Co.* v. *Manufacturing Co.*, 31 Mich. 346; *Jaskulski* v. *Insurance Co.*, 131 Mich. 603 (92 N. W. 98); and the other authorities. A reference to these authorities will show they are not controlling. The cases cited are easily distinguishable from the instant case.

There are many cases which hold that under a loss payable clause in substance the same as in this case,

a mortgagee or vendor in a land contract can maintain a suit in his own name on the policy, when, as in this case, the amount of his claim exceeds the amount of the loss. *Trust Co. of Georgia* v. *Insurance Co.*, 119 Ga. 672 (46 S. E. 855); *Donaldson* v. *Insurance Co.*, 95 Tenn. 280 (32 S. W. 251); *Hartford Fire Ins. Co.* v. *Olcott*, 97 Ill. 439; *Bartlett* v. *Insurance Co.*, 77 Iowa, 86 (41 N. W. 579); *Hastings* v. *Insurance Co.*, 73 N. Y. 141; *Palmer Sav. Bank* v. *Insurance Co.*, 166 Mass. 189 (44 N. E. 211, 32 L. R. A. 615, 55 Am. St. Rep. 387); *Maxcy* v. *Insurance Co.*, 54 Minn. 272 (55 N. W. 825, 40 Am. St. Rep. 299); *Hammel* v. *Insurance Co.*, 50 Wis. 240 (6 N. W. 805); and many other cases found in appellee's brief.

2. Was the policy forfeited prior to the loss because of a change of title or interest in the property insured? Counsel quote from the standard fire insurance policy as to the effect of a change of interest, title or possession. We quote from the brief:

"According to the allegations in the declaration, Harkness parted with all his title to the subject of insurance on August 13, 1912, by deeding the real estate to Gourlay and wife, giving them a bill of sale of the personal property, which was the subject of insurance, and surrendering the land contract and 'from thence henceforth neither the said M. S. Harkness nor Jean A. Harkness have had any interest, right, or title to the property known and described in said policy of insurance which was destroyed by fire, as hereinafter stated, and that the said plaintiffs have been the sole and unconditional owners of said property and were at the time of the loss aforesaid.' Here was a complete surrender of title, interest and possession, of the subject of insurance, not only of the real estate, which was held by Harkness under the land contract, but of the personal property on which, by the terms of the land contract, plaintiffs had only an inchoate lien. * * * We submit that the declaration shows change in the title, interest, and possession of the subject of insurance, both real and personal, within the rule laid down by these authorities. At the

time the loss payable clause was attached, Harkness was the sole and unconditional owner within the meaning of the Michigan decisions. He could have enforced specific performance of the contract of purchase against Gourlay and wife. Gourlay and wife had only an inchoate lien on the personal property to secure performance of the land contract. At the time of the fire, Harkness had no interest whatever. He had not only submitted to cancellation of his land contract, but, in order to make sure that he had no title in any of the property, which was the subject of insurance, plaintiffs, Gourlay and wife, had taken from him a deed to the real property and a bill of sale of the personal property."

Several authorities are cited in support of this contention, among them *Collinsville Savings Society* v. *Insurance Co.*, 77 Conn. 676 (60 Atl. 647, 69 L. R. A. 924). A reference to these cases will show they are distinguishable from the case before us. The authorities are not agreed as to whether a conveyance from the mortgagor to the mortgagee would be such a change of interest as would avoid the policy. In *Pioneer Savings & Loan Co.* v. *Insurance Co.*, 68 Minn. 170 (70 N. W. 979), appears the following:

"Default was thereafter made in the mortgage, the same was foreclosed, the plaintiff became the purchaser at the foreclosure sale, the time to redeem expired, no redemption was made, and plaintiff became the absolute owner of the property. Thereafter, and during the term of the policy, a loss by fire occurred. No notice of the change of ownership through such foreclosure was given to the defendant, and it claims that by reason of the failure to give such notice and have permission for such change indorsed on the policy, the policy is void. This point is disposed of by the case of *Washburn* v. *Fire Association*, 60 Minn. 68, 72 (61 N. W. 828 [51 Am. St. Rep. 500]). The fact that in that case the mortgagee itself paid the insurance premium, while in this case the mortgagor paid it, does not, as appellant seems to contend, change the meaning of the language of the contract. We held in that case that 'the proviso that the mortgagee

should notify the defendant of any change of ownership which should come to its knowledge evidently has reference only to changes resulting from the acts of the mortgagor or owner of the equity of redemption.' The proviso has reference to a change or transfer of title or possession to a third person, not to one from the mortgagor to the mortgagee through a foreclosure."

See *Washington Ins. Co.* v. *Hayes,* 17 Ohio St. 432 (93 Am. Dec. 628) ; *Ft. Scott Building & Loan Ass'n* v. *Insurance Co.,* 74 Kan. 272 (86 Pac. 142).

In *Westchester Fire Ins. Co.* v. *Dodge,* 44 Mich. 420 (6 N. W. 865), it was said:

"The errors assigned will be considered in order:

"*First,* that the policy became void before the loss occurred under the condition in the policy providing that if the property insured be sold or transferred or any change take place in title or possession, whether by legal process or judicial decree or voluntary transfer or conveyance, the policy should be void. It was insisted that, under this provision, the policy was rendered void because of the death of Mr. Kendrick before the loss occurred, and for the farther reason that by the will of the deceased a complicated disposition of his real estate had been made, all of which changed the title, rendering the policy void.

"Whether the death of a person insured before a loss occurred would render void the policy, we are not called upon to determine in this case. By the terms of the policy the loss was made 'payable to Chester Downer of Sharon, Vermont, as his mortgage interest may appear,' and under such a provision the mortgagee could not be cut off from the protection which the policy afforded him by the death of the person to whom the policy was issued."

It was further held that the mortgagee was one of the persons assured within the meaning of the policy. See *Watertown Fire Ins. Co.* v. *Sewing Machine Co.,* 41 Mich. 136 (1 N. W. 961, 32 Am. Rep. 146). In *Hopkins Manfg. Co.* v. *Insurance Co.,* 48 Mich. 148, 150 (11 N. W. 846), it was said:

"The foreclosure of plaintiff's mortgage under the statute, so long as the redemption remained open, could not be regarded as a sale or transfer by the owner of the fee, who took no step and was not by himself or tenants disturbed under or before the fire, and it may be doubted whether a foreclosure of an existing mortgage could have any such effect at all."

In *Foiles* v. *Insurance Co.*, 175 Mich. 716 (141 N. W. 879), which was a case where the vendee in a land contract gave a quitclaim deed to his vendor, it was held that the transfer was not such a change of interest in the property insured as would, within the provisions of the policy, make it void. In that case, however, the policy was issued in the first instance to the vendor. Among other things, it was said:

"A sale or conveyance of property which increases the interest of the insured, as where the insured mortgagee buys in the property at foreclosure sale or takes a conveyance from the mortgagor, thereby acquiring the whole interest, is not a breach of this condition."

While these cases are not conclusive, they are persuasive in the direction of the contention of the appellee.

. 3. Was the assignment of the policy to the plaintiffs before the loss without the consent of the defendant of no effect? Counsel for the appellant again quote fully from the provisions of the standard policy and insist that in the instant case the consent of the company to the assignment was necessary, citing, among other authorities, *Excelsior Foundry Co.* v. *Assurance Co.*, 135 Mich. 467 (98 N. W. 9, 3 Am. & Eng. Ann. Cas. 707).

We think an examination of this case will show it clearly distinguishable from the one before us. It does not appear from the opinion, as in this case, that there was an attempt to insure the vendor and vendee as their respective interests may appear. There does appear in the opinion the following:

"In a note to *Morrison's Adm'r* v. *Insurance Co.,* 59 Am. Dec. at page 306 (s. c. 18 Mo. 262), there is a classification of the clauses in insurance policies in restraint of alienation. The second class of policies mentioned are those containing a clause restricting a transfer, change, or termination of the interest of the insured in the property insured. At page 308 it is said of this class that the generally accepted interpretation is that the whole interest of the insured must pass, and while an insurable interest remains he may recover. To the same effect is the opinion in *Grable* v. *Insurance Co.,* 32 Neb. 645 (49 N. W. 713)."

In *Welch* v. *Assurance Co.,* 148 Cal. 223 (82 Pac. 964, 113 Am. St. Rep. 223, 7 Am. & Eng. Ann. Cas. 396), decided in 1905, the second headnote reads:

"EFFECT OF MORTGAGE CLAUSE—CONDITIONS NOT ATTACHED TO INTEREST.—Where the policy provided that 'if, with the consent of this company, an interest under this policy shall exist in favor of a mortgagee or of any person or corporation having an interest in the subject of insurance other than the interest of the insured as described herein, the conditions hereinbefore contained shall apply in such conditions of insurance relating to such interest as shall be written upon, attached, or appended hereto,' such provision was intended to have the effect of preventing the conditions previously mentioned in the policy from applying to such interest unless the conditions should be again written upon, attached, or appended to the policy, as applicable to such interest, and the interest of the mortgagee is free from all conditions not so attached."

This note is justified by the opinion. It will be noticed, as will appear later, the clause construed is in the same language as in our statute. In the majority opinion occurs the following:

"The mortgage clause in the policy under consideration is a part of the form of policy known as the 'New York standard form.' This form was prescribed by statute in New York, and made obligatory after May 1, 1887, on all insurance companies doing business in that State. 3 N. Y. Rev. Stat. p. 1663. It has

since been prescribed by statute in Pennsylvania (Brightly Dig. pt. 2, p. 2528), Minnesota (1 Laws Minn. 1891, § 2973), North Dakota (Laws 1890, p. 253, chap. 74), Wisconsin (1 Rev. Stat. 1898, §§ 1941-1953), New Jersey (2 Gen. Stat. p. 1766), and Michigan (1 How. Ann. Stat. §§ 4345-4350). Singularly enough the clause in question does not appear to have been the subject of litigation or judicial interpretation in any of these States. It has been construed, however, by the highest courts of Nebraska, Washington, Mississippi, Illinois, Iowa, and Missouri in the following cases: *Oakland Home Ins. Co.* v. *Bank of Commerce*, 47 Neb. 717 (66 N. W. 646 [36 L. R. A. 673] 58 Am. St. Rep. 663) ; *Boyd* v. *Insurance Co.*, 25 Wash. 447 (65 Pac. 785 [55 L. R. A. 165]) ; *Queen's Ins. Co.* v. *Building Ass'n*, 175 Ill. 115 (51 N. E. 717) ; *Christenson* v. *Insurance Co.*, 117 Iowa, 77 (90 N. W. 495 [94 Am. St. Rep. 286]) ; *East* v. *Insurance Ass'n*, 76 Miss. 697 (26 South. 691) ; *Senor* v. *Insurance Co.*, 181 Mo. 115 (79 S. W. 687). These decisions all concede that, in the absence of such mortgage clause, the mortgagee takes subject to all the conditions expressed in the body of the policy, but hold, as we have held, that by virtue of the mortgage clause in the body of the policy the interest of the mortgagee is free from all such conditions, except such as are repeated at the time of the creation of that interest by being at that time again, in substance at least, written upon the policy or attached or appended thereto."

This opinion was signed by four of the justices. The concurring opinion was signed by the other two justices. In it occurs the following:

"If I were entirely free to follow my own notion about the question, my inclination would be to agree with the dissenting opinion of Mr. Justice Anders in *Boyd* v. *Insurance Co.*, 25 Wash. 453 (65 Pac. 785 [55 L. R. A. 165]), and hold that such clause was not fairly susceptible of the construction claimed by respondent in the case at bar. But this identical clause, which seems to have originated in New York, has become quite common in insurance policies, and has been before a number of courts for interpretation, and its meaning has almost universally been held to

be that none of the forfeiting conditions as against the insured affect the mortgagee, except those which are restated in the 'loss payable clause,' and that if there are no such conditions in said last-mentioned clause, the insured can do no act whatever which will in any way affect the right of the mortgagee. It was so expressly held in *Oakland Home Ins. Co. v. Bank of Commerce*, 47 Neb. 717 (66 N. W. 646 [36 L. R. A. 673] 58 Am. St. Rep. 663); *Queen's Ins. Co. v. Building Ass'n*, 175 Ill. 115 (51 N. E. 717); *Christenson v. Insurance Co.*, 117 Iowa, 77 (90 N. W. 495, 94 Am. St. Rep. 286); *East v. Insurance Ass'n*, 76 Miss. 697 (26 South. 691); *Senor v. Insurance Co.*, 181 Mo. 104 (79 S. W. 687); and *Boyd v. Insurance Co.*, 25 Wash. 447 (65 Pac. 785 [55 L. R. A. 165])."

To the same effect are the following cases: *Oakland Home Ins. Co. v. Bank of Commerce*, 47 Neb. 717 (66 N. W. 646, 36 L. R. A. 673, 58 Am. St. Rep. 663), decided in 1896; *Queen's Ins. Co. v. Building Ass'n*, 175 Ill. 115 (51 N. E. 717), decided in 1898; *Christenson v. Insurance Co.*, 117 Iowa, 77 (90 N. W. 495, 94 Am. St. Rep. 286), decided in 1902; *Senor v. Insurance Co.*, 181 Mo. 104 (65 Pac. 785, 55 L. R. A. 165), decided in 1903.

In 1905 our legislature made provision for the adoption and use of a standard form of fire insurance policy. See Act No. 277, Public Acts of 1905, p. 423. This standard policy has the following clause:

"If, with the consent of this company, an interest under this policy shall exist in favor of a mortgagee or of any person or corporation having an interest in the subject of insurance other than the interest of the insured as described herein, the conditions hereinbefore contained shall apply in the manner expressed, in such provisions and conditions of insurance relating to such interest as shall be written upon, attached or appended hereto."

It will be observed that this is the same language which was construed in *Welch v. Assurance Co., supra.*

It is a familiar rule that, where one State passes a statute then existing in another State which has been construed, courts will presume that the legislature recognized the construction placed upon the statute by the courts of the State from which it was taken, and accepted such construction. *State* v. *Holmes,* 115 Mich. 456 (73 N. W. 548) ; *Stellwagen* v. *Wayne Probate Judge,* 130 Mich. 166 (89 N. W. 728).

We, then, have a case where, with the consent of the defendant, on October 21, 1911, the plaintiffs acquired an interest under this policy, both as vendors of the real property and as mortgagees of the personal property described and mentioned therein, and that there was then indorsed upon said policy the following clause:

"It is understood and agreed that M. S. Harkness holds this property under contract of purchase, loss, if any, payable to Joseph G. Gourlay and Mary L. Gourlay and M. S. Harkness as their respective interests may appear."

There is nothing "written upon, attached or appended" to said clause expressing the manner, or stating in any way that the conditions contained in said policy as to a forfeiture thereof in case of a change of interest or title of the insured shall apply to the interests of the plaintiffs in the policy.

We think the trial judge was right in overruling the demurrer.

The case should be remanded, with costs, and defendant given the usual time to plead.

BROOKE and KUHN, JJ., concurred with MOORE, J. BIRD, J., concurred in the result.

OSTRANDER, J. The universal custom of insuring property against loss by fire and the enforced use in this State of a standard form of fire insurance contract render all judicial interpretations and constructions of the prescribed terms of the contract of more

than ordinary importance.   Some of the questions involved in this case have never before been presented in this court, which is one reason for presenting my own views concerning them.   Another reason is that the argument made by Mr. Justice MOORE favors the idea that the policy in suit was not avoided as to the owner of the property, the subject of the insurance, by the admitted change of interest in and title to the property.

The facts are simple.   'The owner of certain real and personal property insured it, in the usual way, for a total sum of $3,000.   He insured the dwelling house for $500; household furniture for $200; barn and sheds for $1,500; hay and grain for $300; wagons, harnesses, etc., for $300; live stock for $200. He conveyed the real estate and appurtenances to plaintiffs by deed, and plaintiffs made with the insured and his wife a contract to reconvey the same to them upon conditions and, pending performance of the conditions, to give them possession of the premises.   A lien was given in the contract upon all of the personal property of the vendees for any sum accruing to the vendors.   This transaction was brought to the attention of the defendant, and it indorsed upon the policy of insurance the words:

"It is understood and agreed that M. S. Harkness holds this property under contract of purchase, loss, if any, payable to Joseph G. Gourlay and Mary L. Gourlay and M. S. Harkness as their respective interests may appear."

So far the case is not complicated; the policy, with its indorsement, being, in effect, a new policy insuring the vendee in the land contract, who was also the owner of the personal property, against loss or damage by fire, loss payable to the Gourlays as their interest may appear.   It is not very material to inquire whether, if a fire had occurred before other changes

took place, plaintiffs might have maintained a suit upon the policy. Before the standard form of policy was adopted, it was generally understood that in this State a mortgagee, or other lienor, mentioned in a policy of insurance was a mere appointee of the insured, the contract being a personal contract between the insured and the insurer. Commentators and text-book writers regarded the decisions of this court as conclusive upon this subject. The apparent exceptions to the rule made in some of the cases only confirmed the rule. In *Westchester Fire Ins. Co.* v. *Dodge*, 44 Mich. 420 (6 N. W. 865), referred to in the opinion of Mr. Justice MOORE, it was said that the mortgagee named in the policy was one of the persons assured, within the meaning of the policy. Reference to the opinion in that case and in the one upon which it is based (*Watertown Fire Ins. Co.* v. *Sewing Machine Co.*, 41 Mich. 131 [1 N. W. 961, 32 Am. Rep. 146]), shows that it was not intended to hold that the mortgagee was a party to the contract of insurance. In the case last mentioned one question was whether the provision in the policy relating to notice of the fire had been complied with. The insured did not give any notice; the mortgagee mentioned in the policy did give the notice. The provision of the policy was that "in case of loss the assured shall give immediate notice. * * *" It was held that the notice given by the mortgagee was sufficient because the insured ought not to be permitted by the neglect or refusal to give it to deprive the mortgagee, who had a direct interest in the matter, of his rights. And it is said, although it was not necessary to say it, and the point was not necessarily involved, that the mortgagee was one of the parties "assured" within the meaning of the policy. In *Westchester Fire Ins. Co.* v. *Dodge, supra,* one question was whether the death of the person insured before the loss occurred rendered the policy void, be-

cause thereby title to the property changed, and it was held that it would not in a case where the policy by its terms made the loss payable to a mortgagee; since the mortgagee's rights could not be cut off by the death of the person to whom the policy was issued. Another question was whether suit was begun (by the administrator of the estate for the use and benefit of the mortgagee) in season; the policy providing that suit must be begun within 12 months after the loss occurred. It was held that the insurer was estopped to raise the question, and in this connection it is said that:

"The mortgagee was one of the persons assured within the meaning of the policy (*Watertown Ins. Co.* v. *Sewing Machine Co.,* 41 Mich. 136 [1 N. W. 961, 32 Am. Rep. 146]), and there may be some question whether his rights could be made to suffer by the delay in the appointment of an administrator and the furnishing of proofs of loss."

Another question was whether the administrator (personal representative of the deceased insured) could bring the action, the title to the property having descended to heirs or passed by the terms of his will. Without deciding this, it was said that, being brought for the use and benefit of the mortgagee to whom the loss was made payable by the policy, the objection was without force.

I think it may be said, in view of earlier and of later decisions, notably *Van Buren* v. *Insurance Co.,* 28 Mich. 398, *Minnock* v. *Insurance Co.,* 90 Mich. 236 (51 N. W. 367), and *Jaskulski* v. *Insurance Co.,* 131 Mich. 603 (92 N. W. 98), that before the standard form of policy came into use the usual loss payable clause or rider in or upon a policy of insurance created no contract relations between the mortgagee and the insurer. The default of the insured or his breach of the conditions of the policy avoided it, and no right of the mortgagee survived the breach of conditions

avoiding the policy. It does not avoid the force of our own decisions or advance us in the determination of the real questions involved here to cite cases holding that the mortgagee or other lienor named in a policy may bring suit upon the policy in his own name. Those decisions depend upon a great variety of circumstances, in most of the cases upon the provisions of Codes or other forms of statutes.

The vital questions in the case at bar arise upon circumstances occurring after the policy had been indorsed in the manner above stated, and before loss occurred. Without the consent of defendant, the wife of Harkness transferred her interest in the land contract to her husband. He defaulted, the contract was forfeited, and by him was surrendered and canceled. He again transferred the premises to the plaintiffs by deed, and gave to them a bill of sale of the personal property. Thereafter the insured had no interest, legal or equitable, in any property described in the policy. Whether before or after the fire does not appear, but the insured also assigned to plaintiffs the policy of insurance. The policy provides that, if any change, other than the death of an insured, take place in the interest, title, or possession of the subject of insurance, whether by legal process or judgment, or by voluntary act of the insured, or otherwise, the policy shall be void. We have held that, where possession and control of the insured premises were retained by the insured (owner), the making of an executory contract of sale thereof, the vendee not having acquired such an interest as would authorize him to enforce the contract specifically or enable him to secure possession, there was not such a change of title as would avoid the policy. *Zeitler* v. *Insurance Co.*, 169 Mich. 555 (135 N. W. 332). It was said in the opinion in this latter case:

"The contract of insurance in this case is a 'Michi-

gan standard policy'—a form of insurance policy adopted and promulgated by statutory authority for general use throughout the State. It would be narrow and unjustly technical to hold that the form of words adopted for such a policy is inelastic and must have an exact and definite meaning by strict construction, always conveying the same understanding between the parties under all varying circumstances. We think such contracts should be construed with reference to the relations of the parties and the character and situation of the property insured. The court should interpret those forfeiture clauses in the light of the facts and circumstances proven, within proper limits, having in mind the ordinary meaning of the language found in them as applied to the purpose for which the contract was made."

Having determined that there had been no change of title or ownership, which decided the point in controversy, the significance of the language quoted is open to question. The Michigan standard policy, when it is issued, is a contract. Its terms may need construction. But upon the question involved the fact that there has been a change in interest, title, or possession of the subject of insurance either does or does not avoid the policy. The opinion received the assent of less than a majority of the justices, although all sitting concurred in the result, for which reason it may be said that the decision rests upon the point that change of interest, title, or possession in the subject of insurance was not established.

In *Foiles* v. *Insurance Co.*, 175 Mich. 716 (141 N. W. 879), it appeared that plaintiff was the owner of the title to real estate which she insured in her own name, the policy containing evidence by a rider thereupon that the property had been sold upon land contract and that it was mortgaged. Loss, subject to all the terms and conditions of the policy, was made payable to a third person. Before the loss occurred, the mortgage was foreclosed by advertisement, but plaintiff had no knowledge thereof. This, by the

terms of the policy, was not ground of forfeiture. The land contract was forfeited, and the vendee therein quitclaimed to the plaintiff. The doctrine that a sale or conveyance of property which increases the interest of the insured is not a change in the interest, title or possession of the subject of insurance within the meaning of the policy was applied. In *Excelsior Foundry Co.* v. *Assurance Co.*, 135 Mich. 467 (98 N. W. 9, 3 Am. & Eng. Ann. Cas. 707), the insured buildings were upon land held by the insured under land contract. No other interest than that of the insured was mentioned in the policy. One Frank W. Wheeler held the legal title to the premises. To him the insured contracted to sell its interest in the premises and personal property. Something was paid in consideration, but the bill of sale had not been delivered, and there was testimony to the effect that title was not to pass until the bill of sale should be delivered. It was held that, while the authorities are in conflict:

"The weight of authority is that, under a policy like the Michigan standard policy, any material change in the interest of the insured in the property insured will avoid the policy."

This court in that case repudiated the doctrine that the whole interest of the insured must pass in order to avoid the policy, although in Justice MOORE'S opinion in the case at bar this repudiated doctrine is restated in a quotation from the opinion in *Excelsior Foundry Co.* v. *Assurance Co.* apparently with approval.

There is a manifest distinction between the cases in which the question is upon the title of the assured at the time the policy was issued—whether it is, within the meaning of the policy, the unconditional, sole, title—and cases where a change in interest, title, or possession is the ground of forfeiture relied upon. The insuring company may be satisfied with the risk it assumes in its policy, and may yet insist, and in the

Michigan standard policy does insist, that with a change of interest or title or possession its liability shall cease. Being satisfied with the risk originally assumed, it may reasonably be held that, if the interest of the assured in the property insured increases, the moral hazard is lessened, rather than increased, and that a policy is not avoided because the assured has acquired an interest in the property which was outstanding when the policy was issued. It is in pursuance of the plain terms of the contract, and is logical to hold (it would be illogical to hold otherwise), that when the assured loses such interest in the property as he had when the policy was issued the policy is avoided. One has only to examine our own decisions and the authorities cited and approved in *Excelsior Foundry Co.* v. *Assurance Co.* to appreciate the reason for the condition in the policy and for its enforcement.

It is clear that in the case at bar as to the assured the policy was avoided when he divested himself of all interest in the insured property. He could thereafter assign to plaintiffs no actionable interest in the contract, either before or after the fire occurred.

It is said, however, that the plaintiffs are unaffected by the change of title of the assured because the conditions in the policy are not binding upon them. The clause in the Michigan standard policy relied upon is not free from ambiguity. The cases cited in the opinion of Mr. Justice MOORE hold, in effect, that by virtue of the mortgage clause in the body of the policy the interest of the mortgagee is free from all conditions, except such as are repeated, directly or indirectly, in specifying the mortgagee's interest. The conditions in the policy which, under a similar contract, have been held to be binding upon the assured but not on the mortgagee, are conditions relating to the time for proving loss and beginning suit (*Queen's Ins. Co.*

181 Mich.—20.

v. *Building Ass'n*, 175 Ill. 115 [51 N. E. 717]) ;
relating to the commencement of foreclosure pro-
ceedings (*Christenson* v. *Insurance Co.*, 117 Iowa,
77 [90 N. W. 495, 94 Am. St. Rep. 286]) ; relating
to additional insurance (*Boyd* v. *Insurance Co.*, 25
Wash. 447 [65 Pac. 785, 55 L. R. A. 165] ; *Senor* v.
*Insurance Co.*, 181 Mo. 115 [79 S. W. 687]) ; relat-
ing to alienation of the property without consent of
the insurer (*East* v. *Insurance Ass'n*, 76 Miss. 697
[26 South. 691] ; *Oakland Home Ins. Co.* v. *Bank of
Commerce*, 47 Neb. 717 [66 N. W. 646, 36 L. R. A.
673, 58 Am. St. Rep. 663] ; *Edge* v. *Insurance Co.*,
20 S. D. 190 [105 N. W. 281] ; *Welch* v. *Assurance
Co.*, 148 Cal. 223 [82 Pac. 964, 113 Am. St. Rep. 223,
7 Am. & Eng. Ann. Cas. 396]) ; relating to state of
title of the insured when policy was issued, under a
somewhat different provision as to the mortgagee
(*Bacot* v. *Insurance Co.*, 96 Miss. 223 [50 South. 729,
Ann. Cas. 1912B, 262]). In Massachusetts the form
of standard policy relating to mortgagees is:

> "If this policy shall be made payable to a mort-
> gagee of the insured real estate, no act or default of
> any person other than such mortgagee or his agents,
> or those claiming under him, shall affect such mort-
> gagee's right to recover in case of loss on such real
> estate."

It has been held that the mortgagor's conveyance
of his equity of redemption does not affect the right
of the mortgagee to recover under such a policy.
*Whiting* v. *Burkhardt*, 178 Mass. 535 (60 N. E. 1, 52
L. R. A. 788, 86 Am. St. Rep. 503). But it is held
(*Union Institution for Savings* v. *Insurance Co.*, 196
Mass. 230 [14 L. R. A. (N. S.) 459, 13 Am. & Eng.
Ann. Cas. 433]), that the policy creates a liability
of the insurer dependent in part upon the perform-
ance of certain acts by the owner of the property, after
the fire, in reference to the claim. The insurer has

an option to rebuild or repair structures, and does not undertake to pay until the amount of the loss is determined by arbitration unless agreed upon or arbitration is waived. By implication the mortgagee, the mortgagor failing, has a right to make a statement of loss and ask for an arbitration. Failing to do so, he has no right to sue upon the policy, which is construed to preserve to the insurer certain rights notwithstanding the mortgagee clause in the policy.

According to its provisions, the Michigan standard policy may be canceled at the request of the insured. It provides for paying a proportion only of a loss where there is concurrent insurance; that the insurer shall not be liable for a loss occasioned by invasion, insurrection, riot, or civil war, or by theft, or by neglect of the insured to use all reasonable means to save and preserve the property; that if a fire occur the insured shall give immediate notice in writing, etc., for arbitration in case of disagreement as to the amount of the loss; that no suit or action on this policy for the recovery of any claim shall be sustainable in any court until after full compliance by the assured with certain requirements, nor unless begun within 12 months next after the fire. I have mentioned some of the provisions of the contract which must be interpreted and construed as a whole, and, in this case, must be interpreted and construed also with reference to the mortgagee or "loss payable" indorsement. Its proper construction, as affecting the questions here involved, seems to me to be that, when no conditions are directly coupled with the loss payable rider or indorsement, the policy will not be avoided, as to the mortgagee or other lienor, by any breach of its conditions on the part of the insured. On the other hand, the liability of the insurer will not be increased or changed because the loss is made payable to some one other than the insured. It does not become obligated

to pay the mortgagee a sum of money in the event of a loss. The undertaking of the insurer must still be measured by the terms of the policy. It may restore the destroyed property, insist upon notice of the fire and proofs of loss, in so far as the mortgagee can comply with the conditions of the policy, may insist upon arbitration and that suit upon the policy shall be begun within one year next after the loss. It is not intended to here state inclusively and exclusively the rights of either the insured or the mortgagee, but to illustrate only. The construction indicated is in line with the authorities which have been referred to. If the case presented was one where the insured had sold his property to a third person, the construction indicated would sustain the theory that the policy as to the plaintiffs is not avoided, and that they may sue upon it. The facts are, however, that the insured did not sell the property to a third person, but in his breach of the conditions of the policy, a breach which avoided it as to him, he dealt with the plaintiffs. Plaintiffs are in the position of saying that, because not repeated in the indorsement made in their interest, they are unaffected by certain conditions of the policy or by breaches of those conditions; that therefore those conditions may be breached in their favor, by their aid. I think they cannot maintain this position, and that, having assisted in rendering the policy void as between the insured and the insurer, it cannot be held valid as to them. I appreciate that this ruling would apply in case an insured mortgagor, without the assent of the insurer, conveyed his equity of redemption to the mortgagee, whose interest was protected by the policy. I know of no good reason why it should not so apply. He is no longer a mortgagee, but has become an owner of the property. If he insured it as owner, he would be bound by the conditions in his policy. No reasonable construction of the con-

tract will permit him to maintain the position of owner as to the insured and mortgagee as to the insurer.

The demurrer should have been sustained.

McALVAY, C. J., and STONE and STEERE, JJ., concurred with OSTRANDER, J.