HOURAN v. ÆTNA INSURANCE CO.

1. INSURANCE—POLICY—VENDOR AND PURCHASER—FRAUD.
   Where at the time of issuing an insurance policy the insured stated to defendant's agent that the property was owned by B., with a contract interest in S. and H., and the loss was made payable to B. as owner and to S. and H. as their interests might appear, and the evidence disclosed

that the wife of B. was the owner and vendor, but had no substantial interest and knew nothing about the execution of the policy of insurance, the sole heir of H. who paid the premiums was entitled to sue on the policy as the assignee of all the real parties interested, and the policy was not void for fraud. It was unimportant whose name was inserted as the nominal party to the contract, having no beneficial interest in the insurance and having no knowledge about the insurance.

2. SAME—VENDOR AND PURCHASER—PAYMENT.

The purchasers under land contract who paid up their contract simply increased their interest, and although they had obtained a warranty deed of the premises after the issuance of the policy there was no such change of interest as to avoid the policy.

3. SAME.

*Held,* also, by an evenly divided court, that the fact that the deed was taken in the name of H.'s heir and devisee to secure an indebtedness arising out of the construction of a house on the real property and as security for other indebtedness due from S., did not so increase the risk that the policy was avoided as to the executors of the estate of H., who claimed and were found by the verdict not to have known of the execution of the deed.

STONE, OSTRANDER, BIRD, and STEERE, JJ., dissenting.

Error to Genesee; Wisner, J. Submitted November 20, 1913. (Docket No. 50.) Decided December 19, 1914. Rehearing denied January 29, 1915.

Assumpsit by Mary M. Houran against the Ætna Insurance Company on a policy of fire insurance. Judgment for plaintiff. Defendant brings error. Affirmed.

*Lucking, Helfman, Lucking & Hanlon,* for appellant.

*Thomas Stockton,* for appellee.

KUHN, J. Charles and Mary Schiel, in July, 1908, purchased a lot from Carrie E. C. Berston on land

contract. The negotiations were had on the part of Mrs. Berston by her husband, Neil J. Berston, who signed his wife's name to the contract. The contract was in the form of a book such as is in common use in the sale of lots in new subdivisions. . The Schiels arranged with Michael E. Houran to construct a house on the lot, and on November 5, 1909, the interest of the Schiels in the contract was assigned to Houran to secure him for what was due him. The book containing the contract and showing this assignment was produced at the hearing in this court. After the house was completed Mr. Houran and Mrs. Schiel went to the office of a Mr. Henderson, the agent of the defendant company, and the insurance policy on which this action is based was obtained on the property. The policy was issued on December 29, 1909, and insured "Neil J. Berston, of Flint, Michigan, in an amount not exceeding $1,500 on * * * two-story frame building, and additions thereto, * * * " on the lot purchased by the Schiels from Mrs. Berston. Attached to the policy at the time it was issued was a loss payable clause, as follows:

"Loss, if any, payable first to M. E. Houran, as his contract interest may appear; balance, if any, payable to Charles and Mary Schiel, purchasers under land contract."

The facts concerning the issuance of the policy, as testified to by Mr. Henderson, the agent, stand uncontradicted. The directions as to how the policy was to be written were given by Mr. Houran. He told him that Mr. Berston owned the fee to the property, but that he wanted the policy written so as to protect him (Houran) first, and then the Schiels. The Berstons took no part in the issuance of the policy, and had no knowledge of it. Mr. Houran paid the premium, and the policy was mailed to him the next day.

Mr. Houran died in April, 1910, and his widow,

Mary M. Houran, who was his sole devisee and legatee, and Thos. F. Stockton were named as executors of his estate, and qualified as such in May, 1910. Cornelius Houran, a son of deceased, who had assisted his father in the business, continued to perform such duties after his father's death, and more or less looked after his mother's interest in the estate, with her consent.

The amount due on the land contract was paid' by the Schiels, and they became entitled to a deed to the lot. A warranty deed dated September 29, 1910, conveying the lot, was executed by Carrie E. C. Berston to Mary Houran, and was taken by Cornelius Houran for the purpose, as he testified, of securing the estate of Michael Houran the payment of the amount due the Houran estate from the Schiels. This amount was $2,433.94, and contained charges made for materials furnished the Schiels on different buildings, including buildings other than the insured premises. It is the claim of both of the executors of the estate that they did not know of the existence of the deed prior to the date of the fire, which occurred June 21, 1911, and damaged the insured premises to the extent of $1,280. This suit was brought by the plaintiff as assignee of Neil J. Berston, Charles and Mary Schiel, and the executors of the estate of Michael E. Houran, deceased. Plaintiff having recovered a judgment in the sum of $1,360, the cause was removed to this court by writ of error.

It is the claim of the defendant that, the policy having named Neil J. Berston as the insured, the contract is solely with him, and the loss payable clause merely constitutes Michael E. Houran and Mary Schiel appointees of the insured.

The case of *Jaskulski* v. *Insurance Co.*, 131 Mich. 603 (92 N. W. 98), is called to our attention. In that case the policy was issued to Joseph Navrot, the owner of the land. One Eckert made a loan to Navrot,

and to secure it had taken a mortgage upon the insured property. They were both present when the policy was issued to Navrot. Indorsed on the policy was:

"Loss, if any, payable to Frank C. Eckert, mortgagee, as his interest may appear."

After Navrot's death the insured property was sold by order of the probate court and conveyed to the plaintiff. Eckert foreclosed his mortgage, and the plaintiff redeemed, and Eckert assigned his interest in the policy to the plaintiff. Navrot's widow also quitclaimed to the plaintiff. No notice of the sale or transfer was given to the defendant company. The plaintiff claimed the right to recover on the policy on the ground that it was, in fact, issued for the benefit of Eckert, the payee of the policy, and that he thereby had a contract with the defendant company. This court held that, under these circumstances, the contract of insurance was made with Navrot alone, and he alone could bring suit upon it. An examination of the record in that case further discloses that the application for insurance was made and signed by Navrot alone. The policy of insurance covered other property than that covered by the Eckert mortgage. It was not claimed that Eckert negotiated the insurance, or that he paid any assessment during Navrot's lifetime, and it was very properly held that the mere fact that he held possession of the policy, and that it contained the loss payable clause above set forth, did not make him a contracting party.

The instant case presents an entirely different situation. It is undisputed that Neil J. Berston had no interest whatever in the property and knew nothing about the insurance. The parties who entered into the contract of insurance were Michael E. Houran and Mary Schiel, each having an insurable interest, as insured, and the defendant company, represented

by Mr. Henderson its agent, as insurer. It is said in the opinion of Mr. Justice OSTRANDER that neither Houran nor Mrs. Schiel disclosed to the agent the real interest which each had in the premises, and that most material facts were concealed, and that this is undisputed in the record. It does not seem to me that a fair reading of the record would justify the conclusion that Henderson, the agent of the company, did not know the exact relations of the parties and their interest in the property at the time the contract of insurance was made. On cross-examination he testified as to what occurred at the time this contract was made, as follows:

"*Q.* Now, when Mr. Houran and Mrs. Schiel came in, you say Mr. Houran stated to you he wanted the policy changed?

"*A.* Yes, sir.

"*Q.* He stated to you what was the condition of the title, did he not?

"*A.* Yes, sir.

"*Q.* He stated to you he was selling lumber to these parties, did he not?

"*A.* Yes, sir.

"*Q.* Mrs. Schiel stated the same thing to you, didn't she?

"*A.* Why, yes, sir; it was understood he was.

"*Q.* The three of you were there in the office together, were you not?

"*A.* Yes, sir.

"*Q.* All three engaged in the conversation?

"*A.* Yes, sir.

"*Q.* And they wanted you to draw a policy that would protect Mr. Houran and Mrs. Schiel and her husband, did they not?

"*A.* Yes, sir; I suppose that was the idea.

"*Q.* That was the idea. You drew that policy in accordance—you drew that policy as you supposed, to protect those parties, did you not?

"*A.* Yes, sir."

It is apparent from the contract of insurance itself that there was no intention on the part of the con-

tracting parties to insure Carrie E. C. Berston or Neil J. Berston. The premium was paid by Houran, and he had possession of the policy, and the placing of Mr. Berston's name in the policy did not give him any right or interest to any portion of the proceeds arising from any loss secured by the policy. As was said by Justice CHAMPLIN in *Balen* v. *Insurance Co.*, 67 Mich. 179 (34 N. W. 654) :

"It was unimportant, under the facts of this case, whose name was inserted in the policy as owner. Whosever name was inserted stood there merely as a nominal party, without any beneficial interest in the insurance secured thereby."

See 1 Cooley's Briefs on Insurance, p. 793; *Traders' Ins. Co.* v. *Pacaud*, 150 Ill. 245 (37 N. E. 460, 41 Am. St. Rep. 355) ; *Hopkins Manfg. Co.* v. *Insurance Co.*, 48 Mich. 148 (11 N. W. 846).

It is further contended that there was such a change of interest in the subject of insurance without the consent of the defendant company that the policy by its terms became void. The Schiels, by paying Mrs. Berston the amount they owed on the contract, simply increased their interest in the property. It cannot be said that the risk to the insurer was increased by this transaction. *Foiles* v. *Insurance Co.*, 175 Mich. 716 (141 N. W. 879).

The taking of the deed from Mrs. Berston to Mary Houran raises another question. It was taken as security for indebtedness of the Schiels due on other property than the insured premises. It is claimed that this is such a material change of interest as to avoid the policy. Knowledge of this deed was denied, however, by the executors of the estate, and Cornelius Houran testified that he told neither of them about it. The question of fact thus raised was submitted to the jury by the trial court as follows:

"Now, if you find by a preponderance of evidence

that Mr. Stockton or Mrs. Houran, either of them, authorized the making or accepting of the deed from Mrs. Berston or Mrs. Houran, or if either of them knew that said deed was given before the fire, then plaintiff cannot recover."

The court further charged the jury that:

"If you find that Cornelius Houran had general management of the business affairs of the Houran estate at the time of the delivery of the Berston deed, and that either executor had knowledge of such management or consented thereto, then the Houran estate is bound by Cornelius' acts."

We are satisfied from reading the testimony that these controverted questions of fact were properly submitted to the jury.

We have examined the other assignments of error, but we find no reversible error in the record.

The judgment is affirmed.

MCALVAY, C. J., and BROOKE and MOORE, JJ., concurred with KUHN, J.

OSTRANDER, J. (*dissenting*). The policy in question, like all Michigan standard policies, contains the following:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be a building on ground not owned by the insured in fee simple; * * * or if any change, other than by the death of an insured, take place in the interest, title or possession of the subject of insurance, * * * whether by legal process or judgment or by voluntary act of the insured, or otherwise. * * *

"If, with the consent of this company, an interest under this policy shall exist in favor of a mortgagee or of any person or corporation having an interest in the subject of insurance other than the interest of the insured described herein, the conditions hereinbefore

contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon, attached or appended hereto.    *    *    * "

Who was the insured in the policy in suit, according to its terms? Clearly, it was Neil J. Berston. The persons applying for the insurance so intended, the policy was drawn according to information which they furnished, and the agent who drew it testified that by it he intended to protect three interests—those of Houran, those of the Schiels, and those of the owner. The policy ran for three years. By its terms, in case the contract interest of Houran and of the Schiels was extinguished, and thereafter a loss occurred, Neil J. Berston would be entitled to the indemnity. By its terms, Houran and the Schiels, instead of being the insured, belonged to a class protected by the policy, with rights in many respects unaffected by breaches of its conditions by the insured. *Gourlay* v. *Insurance Co.*, 181 Mich. 286 (148 N. W. 258). The fact that Houran paid the premium and received the policy is unimportant as affecting the plain terms of the policy itself. Both Houran and the Schiels were and are bound by the contract. *Wierengo* v. *Insurance Co.*, 98 Mich. 621 (57 N. W. 833) ; *Wyandotte Brewing Co.* v. *Insurance Co.*, 144 Mich. 440 (108 N. W. 393, 6 L. R. A. [N. S.] 852, 115 Am. St. Rep. 458). It turns out that Neil J. Berston had no interest in the property. The misrepresentation as to his ownership, though innocently made, was none the less material. The contract makes it material. *Graham* v. *Insurance Co.*, 87 N. Y. 69 (41 Am. Rep. 349). The policy is void as to Neil J. Berston and as to Houran and the Schiels, because Berston was not owner of the property, and Houran and the Schiels represented that he was.

My Brother KUHN, as his opinion shows, reforms the contract. He says:

"The parties who entered into the contract of insurance were Michael E. Houran and Mary Schiel, each having an insurable interest, as insured, and the defendant company * * * as insurer."

An answer to this is that the contract itself refutes it and the oral testimony contradicts it. Neither Houran, Mrs. Schiel, nor the defendant's agent supposed that either Houran or Mrs. Schiel occupied or desired to occupy the position of the insured. It was an interest "other than the interest of the insured" which Houran and Mrs. Schiel each sought to protect, to which the defendant consented. But suppose they be treated as the insured. Neither disclosed to the agent the real interest which each had in the premises. Most material facts were concealed. Houran was the assignee of the Schiels as vendees in the land contract. The interest of the Schiels was not only conditioned upon payment of the purchase price to the vendor of the land, but also was conditioned upon paying Houran the debt they owed him. Their interest was incumbered, and Houran held the incumbrance. No one can fairly contend that these were not material facts. That they were concealed—not made known—is undisputed. Aside from this, it appears that the Schiels paid the balance due upon the land contract, and that their vendor, after the policy was issued, conveyed the land to the plaintiff, the sole legatee and devisee of Michael E. Houran, by proper deed of conveyance. The executors of the estate of Michael E. Houran testified that they knew nothing about this conveyance, and whether they did or not was a question submitted to the jury with the instruction that, if they assented, the policy was avoided. There was no disputed question of fact. The evidence is overwhelming that a son of Mrs. Houran, the plaintiff, managed to a considerable extent the business which survived his father, and that he repeatedly made settlements, took security, and in similar matters acted as his

father might have acted in like circumstances. The executors knew, generally, and sometimes specifically, what the son was doing. Moreover, they have not repudiated the particular transaction, but still hold the assignment made by the Schiels and the deed made by the vendor in the land contract. The defendant had no notice of the changed relations, and the policy, by its terms, was avoided. Unless the provisions of the contract of insurance prescribed by the legislature are to be avoided or enforced according to some notion of equitable right formed after the fact, plaintiff cannot recover in this action and defendant's motion for a directed verdict should have been granted.

STONE, BIRD, and STEERE, JJ., concurred with OS-TRANDER, J.